H. KEMPNER ET AL. v. THE COUNTY OF GALVESTON.

No. 2626.

THE COUNTY OF GALVESTON v. H. KEMPNER ET AL.

No. 2667.

1. **County Treasurer—New Bond—Relieving Surety.**—The policy of the statute (Rev. Stats., arts. 3434-3438) is to permit the surety upon a county officer's bond to terminate his liability upon the obligation at any time. The application and the notice prescribed are for the benefit of the officer, and may be waived by him. A new bond made by the officer without the formal notice is legal and binding upon the principal and the sureties.

2. **Sureties on County Treasurer's Bond.**—A new bond was executed under article 3437 on May 12, 1885. It recited that its obligation was for money, etc., received "from and after the eleventh day of May, 1885." *Held,* that had those words been omitted the liability would be upon the makers of the bond for all money which came into the officer's hands as county treasurer *after the eleventh of May,* and that the legal effect of the bond would be the same with or without the qualifying clause.

3. **Payment by Check.**—The collector of taxes was also cashier of a bank in the city. It was the usual mode of doing business between the tax collector and the county treasurer for the collector when he had collected county funds to give the treasurer a check on the bank (the collector in so doing always drew against funds to his credit), the treasurer would receipt for the amount and endorse the checks and return them to the collector as cashier of the bank. *Held,* that it was proper to instruct the jury that on finding such facts they should find the treasurer liable for the money so checked for and deposited.

4. **County Treasurer's Bond for Available School Fund.**—The bond required of the county treasurer under Revised Statutes, article 3728, is only for the protection of the available public free school fund of the county. Art. 3725.

5. **Same.**—It is held that Revised Statutes, article 989, and articles 3728 and 3729, referring to the same fund with an identical purpose, do not require but one bond, and that to be conditioned for the protection of the available school fund.

6. **Official Bonds.**—The statutes of the State require of county treasurers the execution of but two bonds—one a general bond intended to secure the faithful performance of all his duties except such as devolve upon him as treasurer of the available school fund, the other to secure only the safe keeping and faithful disbursement of the last named fund.

7. **Official Duty of County Treasurer.**—The statutes contemplate that the county

treasurer should be the custodian of the securities belonging to the school fund of the county, and that his general official bond is violated when such securities are made way with by the officer.

APPEAL AND ERROR from Galveston. Tried below before Hon. W. H. Stewart.

The opinion states the case.

*McLemore & Campbell*, for Kempner et al.— 1. The suit was brought against the treasurer and his sureties for the breach of a "new bond," as alleged to have been made and executed by the treasurer after one of the sureties on the original and official bond had asked to be relieved therefrom as the statute provided could be done.

The evidence clearly showed that the bond as sued on and established in the evidence was not a "new bond" such as the statutes provided might be given after the execution of the first official bond, and that the bond sued on and as established in evidence was not a bond provided to be given or made by the statute, but was a voluntary bond and not conditioned as the law provided for the statutory new bond or valid as a common law bond. Notwithstanding the court was asked to instruct the jury that they could not find against the defendants unless under the evidence they found that the bond sued on was one authorized or provided for by the statute, yet the court disregarded the written request of defendants and refused to give the same, but charged the jury that the bond sued on and established in evidence was statutory (substantially), and held the defendants and all of them as if the bond in evidence had been given in strict conformity with the statute. Which course and direction of the court were against the law, because, first, the suit was on a strictly statutory bond and the evidence showed no such bond; and second, the bond as shown in evidence was not taken or conditioned as the statutory bond, but was a bond with conventional conditions, unlike the statutory new bond declared on, and was not a good common law bond. Rev. Stats., secs. 3435, 3436, 3437, 3438, 988.

The binding force of the "new bond" arises from the consideration that the officer shall remain suspended until this bond is made and approved as provided by the statute for the protection of the surety, and the "new bond" is supported by the consideration that unless it be given the officer shall not perform the duties of his office or enjoy its emoluments, of which he has been deprived by the terms of the statute. Rev. Stats., sec. 3436.

Johnson v. Erskine, 9 Texas, 10, where the court (Justice Lipscomp) uses this language: "We believe that if a bond, intended to be taken by the authority of a statute, can not be sustained as a statutory bond, that it can not be valid as a common law voluntary bond unless it will

stand as such without the aid of the statute." Lawton v. The State, 5 Texas, 271.

Wooters v. Smith, 56 Texas, 207, where the court (Chief Justice Stayton) uses this language: "To sustain the bond as a common law bond it must appear in substance that the persons now seeking to enforce the same or those persons with whom they are in privity agreed and consented to the contract evidenced thereby with the makers thereof. There is no such agreement set up in this case" (nor in this), "and the case is made to stand" (like this) "nakedly upon the agreement evidenced by the bond made between the officers and the makers. This is not sufficient in a contract which the law has not empowered the officer to make."

2.  The defendants denied in the pleadings that the tax collector of Galveston County had paid to the county treasurer the amount of money stated to have been paid by the plaintiff, and it was shown by the evidence that the tax collector did not make any payments of money directly to the county treasurer, but instead gave checks on two different banks, payable to the order of the treasurer, and took back the checks to himself, endorsed by the treasurer, to be deposited by the tax collector (Weekes) in one of the banks to the credit of the treasurer. The testimony showed that when the collector gave his checks to the treasurer the collector took receipt for so much money as was represented by the checks.

The evidence showed that the collector said on the trial that at the time he gave the checks and took receipts he (the collector) had sufficient money in the banks to meet the checks.

The testimony was conflicting as to whether the collector, Weekes, ever passed the amount of checks to the credit of the treasurer in any bank, or when he deposited the money to the credit of the treasurer, if at all.

And under this state of facts the court charged the jury as follows: "If you believe from the evidence that N. Weekes, in his capacity as tax collector, took receipts from W. J. Burk as county treasurer for moneys in Weekes' hands as tax collector due Galveston County, and that for such receipts Weekes gave Burk checks on the Island City Savings Bank or any other bank where said Weekes had money to meet said checks, and you find that Burk endorsed said checks and returned them to said Weekes as cashier of the Island City Savings Bank with instructions to depost said checks to said Burk's credit in said bank, and hold the money represented by said checks for account of said Burk as county treasurer, to be thereafter disbursed for account of Galveston County, you are charged that this would be a payment to Burk of the moneys represented by said checks, and this would be so even if Weekes failed to place said moneys to the credit of Burk upon the books of said bank; and for the purpose of this suit you must regard such checks as money received by Burk as county treasurer and as creating the same liability of Burk and his sureties, just as if Burk had received gold instead of the checks."

Which said instruction was error, first, because it is a comment on the weight of evidence, and second, because it is not correct as matter of law.

The judge is forbidden by law either to aid a jury or to infringe upon their province in weighing evidence. T. & P. R. R. Co. v. Murphy, 46 Texas, 367; Howerton v. Holt, 23 Texas, 61; Dwyer v. Bassett, 63 Texas, 274; Mo. Pac. Ry. v. Christman, 65 Texas, 369.

A check is not payment until the money passes from the credit of the drawer to some one. Florence Mining Co. v. Brown, 124 U. S., 391; The People v. Baker, 20 Wend., 602; Small v. Franklin Mining Co., 99 Mass., 277; 2 Daniel on Neg. Inst., p. 542, sec. 1623.

*On the cross-appeal.*—1. There was no suit against the county treasurer of Galveston County or his sureties upon the treasurer's "general bond" as given as required of him by article 988, Revised Statutes, and hence there could not have been committed the error complained of in the first proposition of said plaintiff in error.

2. The court committed no error in supporting as it did the exception to that part of plaintiff's petition whereby it was sought by the plaintiff to recover against the sureties on the bond sued on any money for a failure on the part of the county treasurer to pay over or account for any of the school fund or securities belonging to Galveston County, because the treasurer was required to give other bond or bonds as security for any failure to safely keep or pay over the school fund or account for the same. The "general official bond" is required to be executed under article 988 within twenty days after the election is certified, and the petition shows that this bond was not the one sued on. Article 989 is the bond required to be given in the same time (twenty days, etc.,) as the "school fund" bond. And there is no pretense that the bond sued on is or was the available school fund bond required by articles 3725–29, Revised Statutes. Acts Spec. Sess. 18th Leg., ch. 25, sec. 47.

The statute requiring a special bond for the "school fund" has been in force ever since the earliest regulation providing for such a fund, and article 988, Revised Statutes, is the same bond required in 1846, before there existed any "school fund," and therefore has no more reference to the "school fund" now than it did in the beginning, because additional bonds for school fund have been required. Rev. Stats., arts. 989, 3725, *et seq;* Sayles' Civ. Stats., sec. 374a; Simons v. County of Jackson, 63 Texas, 428; Broad v. City of Paris, 66 Texas, 119.

3. The statutes require one bond for the "school fund" (Rev. Stats., art. 989), one for the "available school fund" (Rev. Stats., arts. 3725, 3728–29), and this suit should have been brought against the treasurer and his sureties on the "school fund" bond and "available school fund" bond, because the breach of trust as set out in the petition was the failure of the treasurer to turn over certain securities belonging to the

"school fund" of the county, and the failure to turn over certain collections made for the use and benefit of the "school fund" of the county, and other securities belonging to the fund designated as an available fund. Rev. Stats., arts. 989, 3725–29; Acts Spec. Sess. 18th Leg., ch. 25, sec. 9; Sayles' Civ. Stats., art 3740.

*E. D. Cavin* and *George Mason,* for Galveston County.—1.    The bond sued on was in form and substance and was conditioned in conformity with the statute in such case made and provided, and was executed, delivered, approved, and accepted as therein required, and was a good and sufficient bond to charge its obligors.

The court did not err in refusing to submit to the jury the question whether "the bond sued on was one authorized or provided for by the statute," that being a question of law for the court.

The official whose surety sought to be relieved from his bond had the right to waive service of notice and copy of application provided for by article 3435 of the Revised Statutes, and by giving a new bond instanter to prevent any suspension of his functions, and the Commissioners Court had the right immediately to approve and accept it, as was done.

The incorporation in the condition of the bond of the words "from and after the 11th day of May, 1885," did not add to nor detract from what would have been its legal obligation without them, nor in anywise invalidate it as a statutory bond.

2.    It is the duty of the county treasurer to collect from the county collector all moneys received by the latter for the use of the county.    If the treasurer in his official capacity accepts from the collector as such the latter's checks for such moneys on banks where the collector as such has funds on deposit sufficient to pay such checks, and in his capacity of treasurer gives receipts to the collector as such for such moneys, and endorses and returns such checks to the same person—to-wit, the collector— in his capacity of cashier of a bank, with instructions to place them in such bank to the credit of such treasurer in his official capacity, so that the money represented by such checks may thereafter be disbursed by such bank for the account of the county, under an arrangement for that purpose between the treasurer and said bank or between the treasurer and said cashier, such transaction would be such payment by the collector to the treasurer as would make the treasurer and his sureties responsible for such money to the county; and this would be so although no money actually passed between the two officials and although the moneys were not passed to the credit of the treasurer on the books of the bank until after he had ended his official term by abandoning his office and absconding from the county; nor would such liability on the part of the sureties be diminished by the fact that one of them was the president and the

others directors of the bank entrusted with the funds and with which said arrangement was made.

*On the writ of error.*—1. W. J. Burk and his sureties upon his general bond as county treasurer of Galveston County (which is the bond herein sued on) are liable to said county for any money or securities belonging to and constituting a part of the permanent school fund of said county which came into the possession and custody of said W. J. Burk as such county treasurer, and which he failed to account for or to pay over according to law, and the court should not have sustained defendant's demurrers and exceptions to so much of the petition as sought to recover the value of the three bonds and their coupons charged to have been wrongfully converted, and should have permitted plaintiff to introduce proof to charge said Burke and his said sureties and codefendants with the further sums of fifteen hundred dollars and two hundred and fifty-three dollars and eight cents, charged to have been wrongfully misapplied and converted, all of which belonged to and constituted a part of the permanent school fund of said county. Const., art. 7, sec. 6, and the amendment thereof; Rev. Stats., arts. 988, 989, 3725, 3728; 3729, 3724; Acts Spec. Sess. 18th Leg., ch. 25, sec. 47; Acts 15th Leg., ch. 120, secs. 22, 23.

2. Two distinct and separate causes of action were blended in plaintiff's petition, to-wit, one for the recovery of moneys and the value of securities belonging to and constituting a part of the permanent school fund, and one for the recovery of moneys belonging to and constituting a part of other and general funds of said county, not including the available school fund, and a separate suit might with propriety have been brought upon each, and it will be proper in this cause for the court to affirm the judgment in so far as it resulted in a recovery in favor of plaintiff for said sum of $10,074.11 and to reverse and remand the cause in so far as plaintiff was denied the right to recover the moneys and the value of securities claimed belonging to said permanent school fund of said county. Burleson v. Henderson, 4 Texas, 55–6; Ryburn & Doss v. Nail, 4 Texas, 305, 307; Hurt v. Moore, 19 Texas, 269, 271; Allen v. Read, 18 Texas, 241.

GAINES, ASSOCIATE JUSTICE.—This suit was brought by Galveston County to recover of W. J. Burk, its former treasurer, and the sureties upon his official bond certain moneys alleged to have been received and not to have been paid out or accounted for by him, and also the value of certain securities which came into his hands belonging to the county, which are alleged to have been converted by him to his own use. An exception was sustained to so much of the petition as sought a recovery for the conversion of the securities and for certain moneys which belonged to the school fund of the county. The securities and money for

which a recovery was denied were the proceeds of the sale of lands donated by the State to the county for the benefit of its public schools. The bond upon which the suit was brought was claimed to be a bond given under article 3435 of the Revised Statutes in substitution of a former bond given under article 988. The court held that the defendants were not liable under this obligation for the school fund sued for, but there was a verdict and judgment for the plaintiff for the moneys not belonging to the school fund which Burk was alleged to have received and not to have paid over or accounted for. The sureties on the bond have appealed and the plaintiff has brought a writ of error to this court. The appeal and writ of error have been consolidated in this court and will be disposed of in this opinion.

The questions raised by the defendants' appeal go to the foundation of the whole action and will therefore be first discussed.

The evidence shows that Burk was elected county treasurer in 1884, and gave bond as required by article 988 of the Revised Statutes. On May 12, 1885, J. C. League, one of the sureties upon the first bond, desiring to be relieved of further liability, came with Burk before the Commissioners Court and requested to be released therefrom. An order was immediately entered which recited the fact and granted the request, and thereupon Burk tendered the bond sued on in this action, and it was ordered that the bond so tendered be approved and that the sureties on the former bond be released from further liability. The substituted bond is conditioned that "if the said W. J. Burk as such county treasurer shall faithfully execute the duties of his office and pay over according to law all moneys which shall come into his hands as county treasurer from and after May 11, 1885, and render a just and true account thereof to the Commissioners Court of Galveston County, Texas, at each regular term thereof, then said obligation shall be null and void, otherwise it shall remain in full force, virtue, and effect." The court held in effect that a bond so given was good as a statutory bond and so charged the jury, and refused an instruction to the effect that unless the bond was accepted and approved after an application by the surety to the Commissioners Court asking to be released from the former bond, and after service of notice upon the principal, the bond was invalid.

We are of opinion that there was no error in the court's ruling in these particulars. The policy of the statute is to permit the surety upon a county officer's bond to terminate his liability upon the obligation at any time. Rev. Stats., art. 3435. The right is given absolutely. But in order to protect the rights of the officer it is necessary to afford him a reasonable opportunity to give a new bond. For this purpose the statute provides that an application shall be made by the surety and notice given to the officer and a copy of the application served upon him. Id. The provision is made solely for his protection. Being informed of the

wish of his surety to be released, we see no reason why he may not waive the notice and give the new bond. No personal prejudice can accrue either to him or to the new sureties by such a course. If the attempt were to vacate his office without the statutory notice a different question would be presented. In the present case the surety upon the old bond appeared before the court with the treasurer and made known his desire; the treasurer in effect waived the statutory notice, accepted the result, and immediately filed a new bond which was at once approved. We fail to perceive that either he or his sureties have any right to complain.

It is also insisted that because the words "from and after the 11th day of May, 1885," appear in the condition of the new bond it is not valid. If these words had been omitted the sureties would have been liable for all money which came into the officer's hands as county treasurer after the 11th day of May. The words used neither increased nor diminished their liability, and the legal effect of the obligation is the same as if the words had been omitted.

It appeared by the evidence that Burk kept an account as treasurer with the Island City Savings Bank. N. Weekes was at the time cashier of the bank and also the tax collector of the county. In turning over to the treasurer money collected by the tax collector for the use of the county, it was the course of dealing between the parties for Weekes as tax collector to give Burk a check for the money due the county, taking his receipt as treasurer therefor. The check was immediately endorsed by Burk and delivered to Weekes as cashier of the bank to be placed to Burk's credit. Weekes testified that there was always money in the hands of his drawees to meet the checks. Upon this matter the court charged the jury as follows:

"If you believe from the evidence that N. Weekes in his capacity as tax collector took receipts from W. J. Burk as county treasurer for moneys in Weekes' hands as tax collector, due Galveston County, and that for such receipts Weekes gave Burk checks on the Island City Savings Bank or any other bank where said Weekes had money to meet said checks, and you find that Burk indorsed said checks and returned them to said Weekes as cashier of the Island City Savings Bank, with instructions to deposit said checks to said Burk's credit in said bank, and hold the money represented by said checks for account of said Burk as county treasurer, to be thereafter disbursed for account of Galveston County, you are charged that this would be a payment to Burk of the moneys represented by said checks, and this would be so even if Weekes failed to place said moneys to the credit of Burk upon the books of said bank; and for the purpose of this suit you must regard such checks as money received by Burk as county treasurer and as creating the same liability of Burk and his sureties just as if Burk had received gold instead of the checks."

It is complained that this charge is upon the weight of the evidence and is incorrect as a matter of law. If the checks had been drawn upon a bank where Weekes did not have funds to meet them it may be that they should not be treated as a payment. But if there were funds to meet them when Burk received and receipted for them as money and turned them over to the cashier of the bank to be placed to his credit, we think this settled the transaction as between the county treasurer and the tax collector. If Weekes as cashier of the bank failed to give him credit for the checks on the books of the bank the bank was nevertheless responsible to him for their amount. It then became a matter of indebtedness between him and the bank and did not change the character of the transaction between him and the tax collector. We think the court did not err in charging that it was a payment. We think, furthermore, that the evidence discloses that Burk did ultimately get credit for all the checks, though one for a large amount was not immediately credited to his account on the books of the bank. It appears that some of his sureties were officers of the bank and that they as a matter of precaution had the entry suspended.

We conclude that there is no error in the judgment of which appellants have the right to complain.

The plaintiff in its proceedings under the writ of error complains that the court erred in sustaining exceptions to so much of its petition as sought a recovery for the conversion of the school fund bonds, and in excluding evidence offered of the receipt by Burk of moneys belonging to that fund. The question presented is difficult to determine. The securities and moneys for which a recovery was sought do not belong to what is denominated in our laws as the available school fund, but are the proceeds of the sale of the school lands which were set apart to the county for school purposes. It seems to be conceded by both parties that the bond required by article 3728 of Revised Statutes is not intended to secure other than the available school fund, and therefore that it does not cover the proceeds of the sale of the county school lands or the securities in which they may be invested. We think this construction is correct. The article cited expresses the purpose of the bond to be to secure the faithful performance of the duties of the county treasurer under the chapter in which the article is found. We are not left in doubt to what this refers. That chapter makes the treasurers of the several counties "treasurers of the available public free school fund for the several counties." Rev. Stats., art. 3725.

But it is contended for the plaintiff that the law requires but one other bond, namely, the official bond prescribed in article 988 of the Revised Statutes, and that the treasurer and his sureties upon this bond are responsible to the county for the faithful performance of all his official duties except as treasurer of the available school fund. It is also claimed

that the bond which is provided for in article 989 is the same that is mentioned in article 3728.    On the other hand defendants contend that three bonds are required, one under article 988, one under article 989, and the third under article 3728, and that the bond required under article 989 was intended to secure the permanent school fund of the county.

As we shall have occasion frequently to refer to the language of the several articles of the Revised Statutes which relate to the bonds of the county treasurers we here quote them in connection, omitting such parts as have no bearing upon the question.    They are as follows:

"Article 988.    The county treasurer    *    *    *    shall give a bond, payable to the county judge of the county, with at least two good and sufficient sureties to be approved by the County Commissioners Court, in such sum as said court shall deem necessary, conditioned that such treasurer shall faithfully execute the duties of his office and pay over according to law all moneys which shall come into his hands as county treasurer and render a just and true account thereof to said court at each regular term of said court."    *    *    *

"Article 989.    The county treasurer shall also give an additional bond to the one required in the preceding article for the school fund of his county, with two good and sufficient sureties to be approved by the county judge, in a sum double the amount of such school fund, to be estimated by such county judge, conditioned that he will safely keep and faithfully disburse the school fund according to law and pay such warrants as may be drawn on such fund by competent authority.    Said bond shall be given within twenty days after the treasurer has received his certificate of election."    *    *    *

"Article 3728.    Within twenty days after the receipt of his certificate of election it shall be the duty of the county treasurer to execute a bond with two or more good and sufficient sureties for the faithful performance of his duties under this chapter.

"Article 3729.    Such bond shall be in double the probable amount of the available school fund which may come into his hands, to be estimated by the county judge, and shall be made payable and conditioned as prescribed in article 989."

If articles 989 and 3728 refer to and require one and the same bond, it is apparent that such bond covers only the available school fund.    But it is not quite clear that article 989 does not require one and article 3728 another and different bond, namely, the first for the permanent or non-available school fund of the county and the other for the available fund. Article 989 mentioned the school fund generally, and may be construed to mean both the available and the non-available fund, or either of them. If it was intended to embrace the entire school fund, which the words taken by themselves would indicate, then clearly the sureties on the general bond required by article 988 would not be liable for the keeping and dis-

bursement of any part of the school moneys. But since a bond is required for the keeping and disbursement of the available fund it is equally clear that the words "school funds" used in article 989 must be interpreted to mean available school funds or to apply only to the permanent school fund.

The general sense of the terms must be restricted so as to mean one or the other, since it is not probable that the Legislature intended that two bonds should be given, one to cover both the permanent and the available school funds and another to cover the latter only. If then the bond required by article 989 is another and different bond from that required by article 3728, it secures only the non-available school fund. Is it reasonable to suppose that the Legislature intended this? That fund consists of the proceeds of the school lands granted by the State to the counties respectively for the benefit of their public schools, and is required to be invested in interest-bearing securities, of which the interest only is to be devoted to the maintenance of the schools. In the nature of things the fund consists almost wholly of these securities. The interest as it comes in becomes a part of the available fund. The bond required by article 989 is purely the bond of an officer who is to receive and disburse money, and is not conditioned for the performance of any other function. Could the treasurer's sureties be held liable on such a bond for his conversion of the securities belonging to the school fund? Clearly not. If then article 989 be construed to require a bond to secure the permanent school fund only, we have the anomaly of a third and separate obligation of the county treasurer to protect a part of a particular fund, for which, as it will be shown hereafter, there exists no necessity. It is possible that occasionally the county treasurer may have in hands money belonging to the permanent school fund of his county. On the other hand if the money is properly invested in securities a county treasurer might never receive a dollar of that fund.

The proceeds of the sale of the public school lands belonging to a county are as much its property as any other property or funds held by it. They are all held by the county for certain specific public uses. That the general bond required of county treasurers before the Revised Statutes went into effect was sufficient to have secured this fund there can be no doubt. It had the same conditions as the bond now required by article 988. It secured the faithful performance of all the duties of the treasurer, as well as the paying over of all moneys that should come into his hands as county treasurer. The sureties upon a bond so conditioned, in the absence of some other statutory regulation, would have been liable for the conversion of the school fund securities as well as for the misappropriated of the moneys of the permanent school fund. Then why, in addition to this and a bond to secure the available school fund, require still another to secure a part only of a certain fund which but

for the requirement would have been secured by another obligation? We have no doubt that the sureties on the general bond under that condition of the obligation which makes them responsible generally for the faithful performance by their principal as county treasurer are liable for his conversion of the securities belonging to the school fund. The language is sufficiently comprehensive to embrace this liability, and under no possible construction of the statute is there any other bond that would cover a defalcation in reference to these securities. If a recovery was only sought for the conversion of these securities we might stop here. But since the plaintiff also seeks to recover moneys belonging to the nonavailable school fund of the county, we are called upon to determine whether the obligation of the bond sued on embraces such moneys or not.

We have shown good reason we think for presuming that the Legislature did not intend to require three bonds. The unreasonableness of the requirement would not, however, justify us in disregarding it if the language of the statute made it clear that the Legislature did so intend. In order to hold that articles 989 and 3728 require the same obligation, namely, a bond to secure the available school fund, it is necessary to reconcile some apparent inconsistencies in the language of the two articles. The two, however, are upon the same subject matter and must be construed together. Each article requires a bond payable to and to be approved by the county judge and with same conditions. Article 989 prescribes that the bond shall be for the "school fund of the county." The bond mentioned in article 3728 is evidently for "the available school fund" of the county. Arts. 3725, 3729. To say that the language "the school fund of the county" used in the article first named is to be taken in its unrestricted sense leads at once into an insuperable difficulty. This, the literal construction, would embrace the available school, which articles 3728 and 3827 show clearly was to be secured by a bond covering that fund only. The language must be restricted. We have seen as the condition shows that it does not embrace the securities belonging to the non-available fund, and also that it can not be held to embrace both the available and non-available fund. Which then is the more reasonable construction, that by the words was meant the money of the permanent fund, or that they were to be taken as a part of and in connection with articles 3728 and 3729, and to be limited by the language there used? The latter construction meets the necessity of the case, as we shall hereafter attempt to show, and is within the recognized rules for interpretation of statutes. It best harmonizes all the provisions on the subject. The former construction leads to inconvenience and confusion and to the unreasonable conclusion that the Legislature intended to require a third bond, which was not necessary, in order to secure a part, and a part only, of a particular fund. Thus it appears that it is more reasonable to sup-

pose that by the words "school fund" found in article 989 is meant the available fund than that they were meant to embrace only a part of the permanent fund.

But it may be said that there is a difference in the basis upon which the amount of the bond required in article 989 and that required by article 3728 is to be estimated, inconsistent with the theory that but one bond is meant. Both articles require the amount of the bond to be estimated by the county judge. In article 989 the language is "in a sum double the amount of such school fund," while in article 3729 the words are "in double the probable amount of the available school fund." If our view is correct, then the words "school fund" in the former may be limited by the language of the latter article, and the two may be so far reconciled on the theory that they apply to but one bond. Does the words "amount" in the former and "probable amount" in the latter show a different intention? We think not. If the amount of the moneys which should come into the hands of the county treasurers of the respective counties from the permanent fund was a fixed sum, then the contention that article 989 required a separate bond for such moneys would have been plausible. But we having seen that the conditions of the bond required by that article do not cover the securities, and we think it clear that the moneys of that fund which would probably come into the hands of any particular treasurer more uncertain as to the amount than those he would probably receive from the available fund, it follows that if a separate bond were required for the non-available school moneys of the county that the county judge would be compelled to estimate the amount of the bond by the probable amount of the fund. So that the words "amount" in one article and "probable amount" in the other must be construed to have the same meaning. Since, then, the county judge must of necessity fix the bond by the estimated probable amount in either case, this apparent discrepancy between the two provisions disappears.

The necessity which gave rise to the legislation which requires a special school fund bond of the county treasurer in addition to his general bond will throw light on this subject. The provisions of article 988 of the Revised Statutes in regard to the conditions of the general bond of the county treasurer have been the law of this State ever since 1846. Pasch. Dig., art. 1096. In 1874 the Legislature seemed to have considered it necessary for the first time to require an additional bond for the security of the school fund. By the act in reference to public free schools passed May 2 of that year it was required that before the county treasurer should receive any part of the school fund he should give a bond in double the . amount of the public school fund apportioned to the county, conditioned that he will faithfully receive and disburse all such funds as may come into his hands as treasurer of the school fund. Pasch. Dig., art. 6680hh. At that time the counties had no permanent funds. Const. 1869, sec. 6,

art. 9.   The funds that were to come into the hands of the treasurer were the county's pro rata of the available fund (Pasch. Dig., art. 6680dd) and such sums as might be raised by local taxation.   Id., arts. 6680ff, 6680gg.   By the Constitution of 1876 (art. 7, sec. 6) the lands previously granted to the counties were restored to them and the title vested in them for the use of the public schools of the counties respectively.   These lands were placed under the control of the Commissioners Courts.

By the Act of August 19, 1876, "to establish and provide for the support and maintenance of an efficient system of public free schools," the county treasurers are made "treasurers of the available public free school fund for their respective counties."   Sec. 22.   By section 23 of the same act it is provided that "on receipt of notice from the board of education of the amount of the State fund apportioned to the county, the county treasurer shall execute bond for double the amount thus apportioned, with two or more good securities to be approved by the county judge, conditioned that he will safely keep and faithfully disburse the school fund according to law, and pay such warrants as may be drawn on said fund by competent authority."   It is apparent that this bond was intended to secure the available school fund only.   It is to be approved by the same officer and has precisely the same condition as the bond subsequently required by article 989 of the Revised Statutes.   That articles 989 and 3728 *et seq.* of the Revised Statutes are derived from the section 23 of the Act of August 19, 1876, is shown by the fact that that section is referred to in the margin as the source of the law.   These references are the official work of the commissioners who reported the Revised Statutes for adoption.   The act providing for their appointment required them "to digest the laws and to report which ought and which ought not to remain in force; and to arrange under appropriate chapters and sections all the different acts and parts of acts relating to the same subject matter which they shall deem ought to be continued or adopted, with such marginal and foot notes and explanations as they may deem essential to a clear understanding of the same," etc.   Acts. of 1876, p. 58.

In their report to the Legislature the commissioners say in reference to "Title 25, County Treasurer:"   "The only changes upon the old law will be found in articles 990 and 991, intended to compel this officer to give all the bonds required by law."   See 2 Sayles' Ann. Stats., p. 720. The bonds referred to in the report are the bonds required by title 25. See art. 991.   This title was as reported adopted by the Legislature without change.   See 2 Sayles' Ann. Stats., p. 720.   Again, as to title 78 on Public Education, they say "no serious changes have been made in the existing laws."   See 2 Sayles' Ann. Stats., p. 732.   The existing laws required of the county treasurer two bonds only, a general bond and one for the available school fund.   It is very apparent that the commissioners did not construe the statutes as reported by them for adoption as

requiring more than two bonds of this officer. So much of title 78 as relates to his duties is as nearly as practicable a literal transcript from the act of 1876 previously cited. If the report of the commissioners is to be followed in construing the law this would be decisive of the question. But we hardly think that a construction shown by that report ought to prevail over the clear import of the language of the law as adopted. If on the other hand the language requires construction, we think the report may be looked to to aid in determining its meaning. Mr. Bishop says:

"In this aspect it is proper for them (meaning the courts) to look if they choose into discussions of the legislative body, the views of the draftsman of a bill, of the revisers of statutes, and of the Legislature passing an act. As opinion to persuade it varies with particular circumstances." Bish. on The Written Laws, sec 76; see also Henry v. Tilson, 17 Vt., 479; Horton v. School Comrs., 43 Ala., 598; State v. Nicholls, 30 La. Ann., 980.

In this particular instance we have the opinion of five eminent lawyers upon the construction of their own language, made in the performance of an official duty, with ample time for deliberation. This report they were expressly required to make for the guidance of the Legislature in passing upon their work. Their report has been looked to and their construction followed by this court in determining a question of interpretation of the provisions of the Revised Statutes in regard to the practice in injunction suits, and we think in other cases to which we can not now refer. Coates v. Caldwell, 71 Texas, 19. It is reasonable to suppose that when the construction of any one or more provisions of the Revised Statutes is doubtful and they were adopted without change, the Legislature approved the construction placed upon the language by the commission and intended that such should be the meaning.

We have endeavored to show that the language employed in articles 989, 3728, and 3729 of the Revised Statutes is reconcilable with the theory that those article referred to the same bond. We think also there are some additional affirmative reasons for holding that they do not require two. Article 3729 provides that the bond required by the next preceding article shall be "payable and conditioned as prescribed in article 989." We think this is to be construed as if it read "conditioned as required for such bond in article 989," which would evidently mean that the two articles referred to the same obligation. If it had said the bond shall have like conditions to these prescribed in article 989 it would have indicated that two bonds were demanded with different but similar conditions. But the bonds named in the two articles being required to have the same conditions we think the presumption is strong that they were intended to refer to the same obligation.

Morever, the available school fund provided by the Acts of 1876 and

the previous laws under the Constitution of 1870 belonged to the State, though it was to be set apart to the use of the schools of the counties. The State may have provided a. disbursing agent of this fund other than the county treasurer.   When the Legislature devolved the duty upon him it became necessary to require an additional bond of him to secure the fund.   The first acts provided that he should not receive the fund until he had given the bond.   This was proper to protect the fund.   This provision is omitted in the Revised Statutes.   In lieu thereof he is required to make the bond required by article 989 within twenty days after receiving his certificate of his election, as in the case of his general bond. If article 989 referred to the same bond as article 3728, the mode of enforcing the duty of giving the available school fund bond is provided. If it refers to a different bond, then we have the anomaly of the treasurer being required by articles 3728–9 to give a bond within twenty days after receiving his certificate of election without the penalty of a forfeiture of his office for his failure being attached as in case of his other bonds.   There is no provision in the title of the Revised Statutes on Public Education which prescribes the consequence of the treasurer's failure to give the bond required in that title; and we think that the reason is that the penalty is prescribed in article 991 in the title relating to his duties generally.   That title provides a forfeiture of his office for his failure to give the two bonds prescribed in articles 988 and 989; and we think it follows that the bond required by article 989 is the same mentioned in article 3728.

A still further reason for concluding that the permanent school fund of the county was intended to be secured by the treasurer's general bond is found in the fact that that fund is subject to the control of the Commissioners Court (Const., art. 7, sec. 6), and it is made their duty to fix the amount of and to approve that bond.   Rev. Stats., art. 988.   On the other hand the county judge is given a supervision over the public schools of his county and he is required to approve the warrants drawn on the available school fund.   Rev. Stats., art. 3744.   It is made his duty alone to approve the bond required by articles 989 and 3728.   This is a circumstance tending to indicate that the bond required to be approved by him alone is that intended to secure that fund alone of which he has a limited control, namely, the available fund.

We conclude that our statutes require of the county treasurer two bonds only—one a general bond which is intended to secure the faithful performance of all his duties except such as are devolved upon him as treasurer of the available school fund, the other to secure only the safe keeping and faithful disbursement of the last named fund.

We have not found any express provision of the statutes which makes the county treasurer the custodian of the securities belonging to the permanent school fund.   But he is required by article 995 to keep an ac-

count of "the debts due to and from his county, to direct prosecutions according to law for the recovery of all debts that may be due his county, and superintend the collection thereof." Article 996 requires him to report the debts due to the county to the Commissioners Court, and the next succeeding article contains this language: "He shall deliver the moneys, securities, and all other property of the county in his hands * * * to his successor in office." These articles are sufficient to show as we think that it was contemplated that the county treasurer should be the custodian of the securities belonging to the school fund of the county.

It follows from what we have said that we are of opinion that the court below erred in sustaining the exceptions to the petition and in excluding evidence offered to show the receipt by Burk of money belonging to the non-available school fund to the county.

We do not consider this a case in which the judgment may be affirmed in part and reversed in part, as plaintiff in error claims it to be. The judgment will therefore be reversed and the cause remanded. The defendants in error will pay the costs both of the appeal and of the writ of error. Their sureties on their appeal bond are only liable for the costs of the appeal.

*Reversed and remanded.*

Delivered March 5, 1889.

I doubt the correctness of so much of the above opinion as holds that the sureties on the county treasurer's general bond are liable for money that went into his hands from the sale of school lands belonging to the county.          STAYTON, C. J.