76   267
76   456

---

### W. J. BURK ET AL. v. THE COUNTY OF GALVESTON.
#### No. 2788.

**1.   Available School Fund — County Treasurer's Bond.**—A county treasurer executed his official bond conditioned that "he would faithfully keep and faithfully disburse the school fund according to law." Suit was brought upon the bond, and the defendant excepted to the petition on the ground that the available school fund apportioned to the county by the State belonged to the State, and that as to such of the funds sued for the suit should have been brought in the name of the State. *Held:*

1.   That the exception was not well taken, and that suit was properly brought by the county.

2.   That it was not necessary that the bond on its face should recite in terms that it included available school fund.

3.   Under the bond suit could also include available school funds of the county from other sources than that apportioned to it.

**2.   Parol Evidence to Limit Official Bond.** — It was incompetent by parol to limit the legal effect of the bond by the county treasurer by showing that it was only intended to secure that part of the available school fund which was apportioned to the county from the State.

**3.   Depositions of State Comptroller.**—Depositions of the State Comptroller are competent to prove the amounts of school fund apportioned to a county by the State Board of Education which were received by a county treasurer. Attached to the deposition were copies of certificates and vouchers provided for in articles 3724, 3740e, 3740f, Sayles' Civil Statutes.

**4.   Drafts on Collector—Payment.**—Drafts in favor of the county of Galveston upon the collector of taxes for the pro rata of State school funds apportioned may be paid by the collector in advance of collections made upon which drawn. The collector is authorized to apply the proceeds of the collections when made to meet such advances. The county treasurer would not be relieved from responsibility by showing that such funds had been paid, etc., after it was due but before the collection from the tax payers. It would be of no consequence at what time money so paid to a county treasurer was actually charged to him in the collector's books.

**5.   Receipt not Conclusive of Payment—School Fund Coupons.**—It having been shown that certain *coupons* drawn upon the tax collector were delivered to the tax collector and receipted, as against the sureties on the treasurer's bond, it was error to instruct the jury that it "would make no difference as to their liability what disposition the collector made of the money for which said coupons were drawn." It appearing in evidence that the money had been appropriated to the purposes intended by law in the payment of the coupons, the error is not sufficient ground for reversal. The coupons are prima facie but not conclusive evidence of the payment of the money.

**6.   Receipt.**—The party contradicting the payment for which his receipt is produced, when testifying in his own behalf, should be able to testify directly that the payment had not been made. See facts held insufficient to contradict a receipt.

APPEAL from Galveston. Tried below before Hon. Wm. H. Stewart. The opinion states the case.

*James B. & Charles J. Stubbs,* for appellants. — 1.   The actual ownership of the fund distributed by the State was in the State, and the suit should have been brought by the State of Texas, or for its use, and not by the county.   Kempner v. Galveston County, 73 Texas, 216; Const., art. 7, secs. 3, 6; Acts 1884, chap. 25, secs. 2, 4, 22.

2.   It is evident that the bond was not given for or intended to cover both the county and the State available funds.   The penalty of the bond is something less than the entire sum apportioned by the State during the two years, and slightly more than double the county available fund for the same time.

3.   If the county authorities only intended the bond to cover the available fund from the State, and so assured the bondsmen, or either of them, or his agent, before the execution of the bond, they can be held to no greater liability than that stipulated for.   Especially should this be so held when the terms and amount of the bond refer to that fund, and are not consistent with the assumption that another fund was also designed to be protected.   If other funds were included, the amount of the bond should have been much larger.   In cases of ambiguity the acts and declarations of the parties are proper to be considered in construing the import and terms of the bond.   Taylor v. McNutt, 58 Texas, 71; Haldeman v. Chambers, 19 Texas, 1; Goldman v. Blum, 58 Texas, 630; Linney v. Wood, 66 Texas, 22; Alstin v. Cundiff, 52 Texas, 453.

As to equitable estoppel.   Edwards v. Dickson, 66 Texas, 613.

4.   The court erred in excluding the testimony of Collector Weekes, offered to show that as treasurer Burk had never been paid, etc.

Sheriff not liable for money received after return day.   Hamilton v. Ward, 4 Texas, 355.

To render a sheriff's sureties responsible for money received, it should appear that it came into his hands by virtue of some process or lawful authority, and that he has failed to pay it over.   Heidenheimer v. Brent, 59 Texas, 533.

Officer's sureties not liable for moneys received by him after his term of office had expired.   People v. Toomey, 17 Am. and Eng. Corp. Cases, 583, and notes.   2 Am. and Eng. Encyc. of Law, p. 466; Barry v. Screwmens' Assn., 67 Texas, 250.

5.   A receipt is not conclusive; it may be explained or contradicted by parol.   Gibson v. Fifer, 21 Texas, 260; 1 Sayles' Rev. Stats., p. 701; Rule 24; Whart. on Ev., 1067.

A charge as to the presumption arising from a certain state of facts, unless a conclusive presumption arises, is a charge on the weight of evidence and is error.   Heldt v. Webster, 60 Texas, 207; Rev. Stats., art. 1317; Dwyer v. Bassett, 63 Texas, 274; Railway v. Christman, 65 Texas, 369; Brown v. The State, 23 Texas, 195; Howerton v. Holt, 23 Texas, 51.

*George Mason* and *Ed. H. Cavin,* for appellee.— 1. The legal title to the available school fund apportioned to Galveston County by the State of Texas through the State Board of Education was in said county, and the county was the proper party plaintiff to sue for a breach of the bond in suit.   Const., art. 7, secs. 3, 5; Sayles' Civ. Stats., arts. 989, 3704, 3724; Id., art. 3740, secs. *a* and *d;* Rev. Stats., arts. 3725-32; Simons v. County of Jackson, 63 Texas, 428-31; Thompson v. Cartwright, 1 Texas, 88; Rider v. Duval, 28 Texas, 622, and cases cited.

2.   It was competent to allege and show that the bond sued on was for the available school fund only.   The bond is statutory, and written in strict conformity to the statute requiring it.   Rev. Stats., art. 989. The bond is for available school fund only, and not for the permanent school fund, and the latter fund is covered by another and different bond, to-wit, the county treasurer's general bond, required by article 988, Revised Statutes.   Even were it otherwise, the recovery sought was for nothing but available school fund, and appellants can not show any injury nor be heard to complain because such recovery was sought for available school fund only, and not for permanent school fund in addition.   Sayles' Civ. Stats., arts. 989, 3740, secs. *a* and *d;* Rev. Stats., arts. 3725-32; Kempner v. Galveston County, 73 Texas, 215, 224-32; Simons v. County of Jackson, 63 Texas, 428.

3.   The bond sued on is intended to and does in fact cover and secure both the apportionment of the State available school fund set apart to Galveston County by the State Board of Education for the maintenance of the public free schools in said county, and the fund arising from interest upon the invested proceeds of sales of lands granted to said county by the State for the benefit of the public free schools, which taken together constitute the available school fund of said county, as distinguished from the permanent school fund.   Sayles' Civ. Stats., arts. 989, 3740, secs. *a* and *d;* Rev. Stats., arts. 3725-32; Simons v. Jackson County, 63 Texas, 428, 431; Kempner v. Galveston County, 73 Texas, 216, 224-32.

4.   The bond is a statutory written obligation, and its terms, conditions, or effect could not be varied by the parol testimony offered.   Sayles' Civ. Stats., art. 989; Rev. Stats., arts. 3725-32; Const., art. 3, sec. 55; Simons v. Jackson County, 63 Texas, 429, 430, 431, and cases there cited.

5.   The coupons or drafts drawn by the Comptroller on the tax collector in favor of the county treasurer were so much available "school fund," and were as so much money in the hands of Burk, and when Burk endorsed his receipt upon them, and delivered and surrendered them up to Weekes, it made no difference as to appellants' liability what Weekes did with the money they called for, and Burk and his sureties were chargeable therewith.   Sayles' Civ. Stats., art. 3740, sec. *e;* Rev. Stats., art. 3730; Kempner v. Galveston County, 73 Texas, 216, 221, 224.

HENRY, ASSOCIATE JUSTICE.—This suit was brought by the county of Galveston against W. J. Burk, a former treasurer of the county, and the sureties on his official bond, to recover for a conversion of funds belonging to the county available school fund, said fund being composed in part of apportionments of the State available school fund apportioned to Galveston County by the State Board of Education, and in part of the interest upon the invested proceeds of the lands granted to said county by the State for public school purposes.

The bond sued on is conditioned as follows:

"Now, therefore, if said W. J. Burk, as such county treasurer, will safely keep and faithfully disburse the school fund according to law, and pay such warrants as may be drawn on such fund by competent authority, then the said obligation to be null and void; otherwise to be and remain in full force and effect."

The plaintiff recovered judgment for $2041.67.

The defendant excepted to the petition on the ground that the available school fund apportioned to the county by the State belonged to the State and not to the county.

The language of the Constitution in regard to this fund is:

"And the available school fund herein provided shall be distributed to the several counties, according to their scholastic population, and applied in a manner as may be provided by law." Sec. 4, art. 6.

We think the suit was properly brought in the name of the county. Simons v. County of Jackson, 63 Texas, 428; Kempner v. Galveston County, 73 Texas, 216.

It is urged that the bond sued upon does not show on its face that it was given to secure the available school fund, and that the court erred in not sustaining defendants' exception taken to plaintiff's petition for that cause.

The condition of the bond is in the language prescribed by the statute for bonds given by the county treasurer for the available school fund, and complies in all other respects with the bond required to be given to secure that fund. Rev. Stats., art. 809.

It was unnecessary for it to recite in terms that it was the available school fund that it was intended to secure.

Defendant excepted to the petition on the ground that if the bond should be construed to embrace the available school fund apportioned to the county by the State, then it should not be held to include so much of the available fund sued for as was not derived from the State, but from the county securities, because the law requires "one bond to be given for the county school fund, permanent and available, and another for the State available school fund."

This objection is not tenable, as was decided by this court in the case of Kempner v. Galveston County, 73 Texas, 216.

The defendant pleaded that plaintiff represented to the defendant sureties that the bond sued on was intended only to cover and secure the apportionment of the available school fund made by the Board of Education of the State to the county, and that the sureties so understood their liability.

The court properly sustained exceptions to this defense. The parties to it can not be heard to dispute their liability upon the bond according to its terms and legal effect.

The following provisions of law, applicable to the transactions involved in this suit, were in force when they occurred—quoted from Sayles' Texas Civil Statutes:

" Article 3724. The State Board of Education shall, on or before the 15th day of July of each year, make an apportionment of the available school fund among the several counties of the State according to the scholastic population of each, and the State Superintendent shall deliver an abstract of such apportionment to the Comptroller, and to each county judge a statement of the amount apportioned to their county; and he shall issue to the county treasurer of each county a certificate for the amount of the available school fund so apportioned to his county, which certificate shall be signed by the Governor as president of the Board of Education, countersigned by the Comptroller of Public Accounts, and attested by the secretary."

" Article 3740e. Upon receipt of the certificate from the State Board of Education, duly countersigned by the Comptroller, showing the pro rata of the available school fund to which his county is entitled under the apportionment, the county treasurer shall present the same to the collector of taxes for his county, who shall pay the same, from time to time, out of the school taxes in his hands.

" Article 3740f. The county treasurer shall endorse the amounts so paid by the collector on the certificate, and shall also execute and deliver to the collector duplicate receipts for such payments, and when the whole amount of such certificate shall have been paid the county treasurer shall deliver the same to the collector, in whose hands it shall be a voucher for so much money in his settlement with the Comptroller of Public Accounts."

Plaintiff was properly permitted to read in evidence the deposition of John D. McCall, State Comptroller, to prove the amounts of school fund apportioned to Galveston County by the Board of Education that were received by Burk as treasurer, and attached certified copies of certificates and vouchers; the copies of the vouchers with the receipts of the treasurer endorsed thereon being attached to show that the full amount of the apportionment evidenced by the certificates had been received by the treasurer.

It appears that to the certificate required by article 3724 to be issued as

evidence of the amount of the available school fund to which the county was entitled, the Comptroller attached four coupons, each for one-fourth of the whole amount to which the county was entitled. These coupons or orders had the form of receipts to be signed by the county treasurer endorsed upon or attached to them, and seem to have been used and executed instead of the duplicate receipts prescribed by article 3740f.

The copy of the certificate for the year ending August 1, 1885, is in the following words and figures:

"THE STATE OF TEXAS, DEPARTMENT OF EDUCATION,
"AUSTIN, August 1, 1884.

"*To the County Treasurer of Galveston County:*

"Your county is entitled to two thousand six hundred and fifty dollars, the same being the amount of available school fund apportioned to your county for support of public free schools for the scholastic year ending August 31, 1885."

Section 47, School Laws for 1884, provides for the payment of this certificate.

This certificate was signed by the Governor and attested by the secretary of the Board.

The record contains also a copy of the certificate issued for the year ending August 1, 1887, similar in all respects to the one copied, except that the amount is blank, which, we presume, was caused by an omission made in copying it.

To each certificate four coupons were attached, all in the same form. One of them reads as follows:

"No. 4.                                          ·     $564.06.
"THE STATE OF TEXAS.

"*For Galveston County:*

"The collector of taxes will pay to county treasurer five hundred and sixty-four and six one-hundredths dollars, being installment No. 4 on Department of Education certificate No. 62 for school fund due for year ending August 31, 1887, and return this coupon, with county treasurer's receipt thereon, as soon as paid, to be credited on current account.

"W. J. SWAIN, Comptroller."

Endorsed on the back:

"Received payment of this coupon from tax collector, this —— day of ——, 188—.

"W. J. BURK,
"County Treasurer Galveston County."

N. Weekes, the tax collector, testified that warrants were drawn upon him in favor of the treasurer by the Comptroller in the form of coupons as shown above; that he paid two of them for $662.50 each for the year ending August 31, 1885, in cash to Mr. Burk, or his representative on his order, and that he receipted for them.

He testified further as follows: "Referring now to those for the year ending August 31, 1886, I turned the originals in to the Comptroller's Office in the settlement of my accounts. I received the originals from Treasurer Burk. They were orders on me in his favor drawn by the Comptroller; one was settled at the time, and the other three were left to his credit against school warrants I paid for him at his request. These were for the year ending August 31, 1886; I paid the money on these orders to said Burk's order. Of those for the year ending August 31, 1886, three of them were deposited by Burk with me as an individual matter between himself and myself; he asked me to take them and hold them and pay the school warrants. The fourth coupon for that year (1886) was brought in some time before the first of November, and it was charged to my account; Mr. McCarty paid it at my request; that was satisfied over the counter; it was satisfied by Mr. McCarty, I suppose; I knew nothing about that personally, but did afterwards; I only know that at first there was a debt against me of so much cash. Three of them were satisfied by means of warrants of teachers. I presume that the first coupon for that year ending August 31, 1886, was satisfied either in cash or in warrants paid up to that time. The other three were left with me as a credit against his warrant, just as were the other four for the next year left subsequently. Burk receipted the coupons on the back in the blanks provided for that purpose and handed them over to me."

W. J. Burk testified as follows: "The circumstances attending the coupons for the year ending August 31, 1886, were: three coupons were paid by Mr. Weekes or the bank; the other one Mr. Weekes told me was there to my credit, and that he would take it and cash it, but at the settlement which he made with the county that warrant was not settled for and no account of it given. This was one-fourth of the apportionment for the year ending August 31, 1886."

The defendant offered to prove by the witness Weekes "that the State available fund for the year ending August 31, 1887, amounting to $2256.26, was not charged to Burk as county treasurer, or otherwise, by the collector until after Burk's successor had qualified; nor were the taxes collected with which to pay the Comptroller's draft for that apportionment until after Burk's term of office had ended and his successor had qualified; also, that he did not in fact ever pay to Burk the sums called for by said drafts, but that he received them from Burk with his (Burk's) receipts endorsed thereon, and held them as collateral security for advances made to or for Burk by Weekes in pursuance of a private arrangement between them; that Weekes reimbursed himself out of taxes thereafter collected, and by charging Burk, in January, 1887, on the collector's books, after he had ceased to be treasurer, with the amounts of the drafts or coupons which he (Weekes) retained out of the taxes collected by him, and in the latter part of January, 1887, transmitted the coupons to the Comp-

troller as credits on his account as collector; that the taxes were not collected with which to pay these drafts or coupons until after Burk's term of office had expired."

The court excluded the evidence. · It is insisted that it was wrongfully excluded, and that it should have been admitted " for the purpose of explaining and contradicting the said undated receipts given by Burk, copies of which are annexed to the Comptroller's deposition; and to show that while Burk may have used the drafts as security for loans, yet the same were not paid to him nor charged to him on the collector's books, nor any taxes collected for or appropriated to the payment of the draft so deposited with Weekes in an unofficial capacity, until long after Burk's term of office had ended, and that such charge or payment so made at that time was not such payment as would render the sureties liable therefor; that is to say, they were not responsible under the bond for any payments made Burk after he had ceased to be treasurer."

If the collector paid to Burk, during his term of office, money, or if he at his request paid school vouchers that were drawn against the fund during Burk's term of office, and Burk gave him receipts therefor, to be used in his own settlement with the Comptroller, the fact that the collector had not then received the taxes, nor that he did not receive all of the money until after Burk's term of office had expired, furnished no reasons for his not reimbursing himself for the amounts paid when the collections were subsequently made.

While the collector was not required by the law to make payments upon the school apportionment before he had collected the money from the tax payers, it still did not forbid his doing so, and the treasurer can not be held discharged from his obligation to account for the money simply because it was advanced to him, or disbursed for proper purposes by the collector after it was due but in advance of its collection from the tax payers.

The evidence rejected did not tend to show that Burk had used the drafts as security for loans. It does not matter at what time money paid Burk was charged to him on the collector's books.

Appellant complains of the following charge given by the court: "If you believe from the evidence that Burk during his term of office delivered to N. Weekes, State and county tax collector, the coupons for the apportionment for the year ending August 31, 1886, then it would make no difference as to the liabilities of the sureties on Burk's bond what disposition or application said Weekes made of the money for which said coupons were drawn, and Burk and his sureties would be liable therefor."

It is complained that this charge is wrong, " because it made the liability of the sureties depend not upon the receipt of money by Burk, but upon the delivery by him to the collector of receipts or vouchers. In other words, the possession of the draft, or coupon as it was called, by

the drawee, was by the charge given made conclusive evidence of its payment by him; or rather, under the charge, if Burk delivered it up and failed to get the money for it, still his sureties would be liable."

Appellant also complains of the court's giving the first and refusing the second of the following charges:

The charge given and objected to is in these words: "If you believe from the evidence that before the expiration of his term of office Burk delivered the coupons or drafts by the Comptroller in favor of Burk as county treasurer on the State tax collector for the apportionment for the year ending August 31, 1887, to N. Weekes, collector of State and county taxes, with instructions to pay warrants which were presented to him (Weekes) which had been approved by County Judge Austin, then it would make no difference as to the liability of the sureties whether Weekes had in his hands funds derived from State taxes with which to pay such coupons at the time of such delivery or not, nor whether the money itself was paid into Burk's hands or not, nor whether Weekes gave Burk credit for the amount of such coupons before or after Burk's term of office expired; and such transaction between Weekes and Burk would be equivalent to a payment of such amount to Burk as county treasurer, and he and the sureties on his bond would be liable therefor."

The charge requested and refused reads: "If the jury believe from the evidence that the collector did not pay to the defendant Burk $660.40, the amount of one of the coupons representing the apportionment for the second year, or that ending August 31, 1886, or pay school warrants therewith, then you will credit the said amount of $660.40 against the amount claimed by plaintiff."

The questions raised by these charges require a construction of the statutes above quoted with regard to the effect to be given to the certificate showing the amount of school fund apportioned by the Board of Education to the counties, and of the "coupons" attached thereto by the Comptroller.

We think it is plain that it is the "certificate," signed by the Governor and attested by the secretary of the Board of Education and then sent to the county treasurer, that becomes the representative of the fund until it is collected. The law requires that payments to the treasurer shall be endorsed on this certificate, and that "when the whole amount of such certificate shall have been paid the county treasurer shall deliver the same to the collector, in whose hands it shall be a voucher for so much money in his settlement with the Comptroller."

If the surrender of this certificate, made under the circumstances of this case, had been the issue, the charge now complained of that it made "no difference as to the liability of the sureties on Burk's bond what disposition or application Weekes made of the money," would have been proper, because such delivery of the certificate, if made without receiv-

ing the money, would have been a violation of the undertaking in the bond to "safely keep and faithfully disburse" the fund.

We do not think, however, that such dignity or effect can be properly attached to the "duplicate receipts" that the law requires the collector to give to the treasurer "for such payments."

We are not able to attach any other effect to what are described in the proceedings in this case as "coupons," than that they have been adopted by the Comptroller as convenient substitutes for the receipts prescribed by law.                                                                                 .

They are doubtless useful and convenient in practice, and may very well serve the purposes intended as receipts.   We see no objection to their being so used; but by giving to them the form of an order for money, and attaching them as "coupons" to the certificate, they can not be made to take the place of the certificate, or to have attached to them the dignity given by the statute to it.

They can only be used as substitutes for the receipts required by the law, and can serve no other or higher purpose than would the receipts prescribed by law if given.

It is not difficult to conclude that the statute does not attach to them any greater dignity than usually attaches to receipts.   When given they become evidence of the payment of the amounts that they call for, but by no means conclusive evidence, and it is permissible, as in all other cases, to contradict or vary their effect by other evidence.

We think the charge complained of was erroneous, as it gave to them a greater dignity than the law does.

If, however, the evidence shows that the money itself came to the hands of the treasurer, or that it was properly disbursed by his authority in the payment of school warrants, the charge, though erroneous, would not injure the defendant, and the error should be disregarded as immaterial. If, on the other hand, the record contains any evidence that tends to show that the treasurer did not himself, or through an authorized agent, receive the whole of the fund, either in money or in school warrants that the coupons or receipts called for, there would be such probability that the verdict may have been influenced by the erroneous charge as to require the reversal of the judgment.

The only question in this aspect of the case arises with regard to the payment to Burk of the "coupon" for $660.40, representing part of the apportionment for the year ending August 1, 1886.

It is contended by appellant that the evidence shows that that coupon was never paid to Burk.

It is not contended that he did not give to Collector Weekes a receipt for it.   That is prima facie evidence at least of its payment to him. Weekes, as we have seen, testified that all four of the vouchers for that year were paid to Burk.   The evidence of the witness is not as clear on

the subject as could be desired, but still it supports and sustains the voucher.

Burk himself, as we have seen, testified on the subject, and his was the only evidence that it is contended tends to disprove the payment of the money to him. The question for him to meet was, Did the collector pay to him that coupon? If he did not, it was for him to say that he did not. Instead of doing that, his only testimony on the point was: "The other one (the coupon in question) Mr. Weekes told me was there to my credit, and that he would take it and cash it, but at the settlement which he made with the county that warrant was not settled for and no account of it given."

The settlement with the county here referred to was an attempted settlement of his own account after the witness had abandoned the country without having settled or made a report.

While the purpose of the testimony was, no doubt, to cast doubt upon or to deny the payment by the collector of the coupon, it does not directly nor in effect do so. It was the proper thing for the witness to do, and not difficult if he knew the fact, for him to say that the coupon was never paid to him. It may have been paid to him and still not be shown in the settlement made of his accounts in his absence. The settlement may have been incorrect without proving or tending to prove that the money was not paid to him. The correctness of the settlement is not the issue under the charges in question.

We conclude that the court did not commit error in giving or refusing charges on the subject for which the cause ought to be reversed.

We think that the evidence shows that Burk during his term of office voluntarily gave to the collector of taxes receipts for all of the available school fund apportioned to Galveston County by the Board of Education, and that the amounts were either paid to him in money or disbursed by his direction in the payment of school warrants drawn against the fund.

We find no error in the charge of the court directing interest to be calculated from the date that Burk's successor qualified, instead of from the first day of the next succeeding January.

The judgment is affirmed.

*Affirmed.*

Delivered February 21, 1890.