## MONTGOMERY COUNTY v. COCHRAN et al.

(Circuit Court of Appeals, Fifth Circuit. March 3, 1903.)

### No. 1,205.

1. PUBLIC OFFICERS—BONDS—LIABILITY FOR "FUNDS OR MONEY" RECEIVED.

In a statute providing that the proceeds of certain county bonds should be paid to and kept by the county treasurer, and that he should be "responsible for the safe-keeping of all of the proceeds accruing from the sale of said bonds which may come into his hands in his official capacity, the same as other county funds or money in his hands as such treasurer," the terms "proceeds of sale" and "funds or money" are not limited in meaning to coin and bank bills, but include any other medium of payment authorized by general commercial usage, and the treasurer is equally responsible where he accepted a check given by the purchaser, and receipted for the same as the proceeds of the bonds.

2. SAME—ACCEPTANCE OF CHECK.

By the statute of Alabama (Code 1896, § 3070), a county treasurer is required to give a bond "faithfully to discharge the duties of such office during the time he continues therein or discharges any of the duties thereof." He is also expressly made responsible on his bond for "his failure to perform or the improper or neglectful performance of those duties imposed by law." By a special act the board of revenue of a county of which defendant was treasurer was authorized to issue $100,000 in bonds, and to use the proceeds as therein directed. The act provided that the proceeds should be paid to and kept by the treasurer, who should be responsible for the same as for other funds or money of the county. After the board had accepted a bid for the bonds from a local bank, defendant accepted a check of such bank in payment, and receipted to the board for the amount as the proceeds of the bonds on which they were delivered. Defendant deposited the check in the bank, having the same credited to himself as treasurer, as a special fund. After a small part of the fund had been checked out by him in payment of warrants, the bank failed. *Held,* that the effect of the transaction was the same as though defendant had received coin or bank bills from the board as the proceeds of the bonds, and had deposited the same, and that he was liable to the county on his bond as for conversion of the money, it being the law of the state that a general deposit of county funds in a bank by the treasurer is a conversion of the money.

3. SAME—NEGLECTFUL PERFORMANCE OF DUTY.

Conceding that defendant had no right to accept the check, and that not having actually received money he was not responsible for its safe-keeping, his acceptance of it and his receipting to the board for the proceeds of the bonds, by reason of which they were issued and became obligations of the county, amounted to an improper or neglectful performance of a duty imposed by law, and he and the surety on his bond were liable for the loss resulting to the county.

In Error to the Circuit Court of the United States for the Middle District of Alabama.

This suit was brought in the city court of Montgomery, Ala., by the county of Montgomery against John J. Cochran, a citizen of Alabama, and the

121 F.—2

Fidelity & Deposit Company of Maryland, a corporation chartered under the laws of Maryland. It was removed to the Circuit Court of the United States for the Middle District of Alabama on the application of the Fidelity & Deposit Company on the ground of prejudice and local influence. 116 Fed. 985. The action is on Cochran's bond as treasurer of Montgomery county.

On being elected treasurer of Montgomery county, John J. Cochran gave bond payable to the county for $120,000. The Fidelity & Deposit Company of Maryland became his only surety. The condition of the bond is, as provided by statute (Code Ala. 1896, § 3070): "Now, if the said John J. Cochran shall faithfully discharge the duties of such office during the term he continues therein, or discharges any of the duties thereof, then the above obligation to be void, otherwise to remain in full force and effect."

On September 1, 1900, Cochran, with approval of his surety, appointed John P. Kohn his agent, deputy, or attorney in fact by a power of attorney, conferring on him power "to receive and receipt for, in my name, all moneys coming in my possession as treasurer of the county of Montgomery, Ala., and in my name, as treasurer, to pay out all money required by law to be paid by me upon checks signed by the clerk of the board of revenue of said Montgomery county; and, further, to make reports, keep all books required by law to be made or kept by me as such county treasurer, and to do and perform all acts and things I might lawfully do in my own name as such county treasurer; and I hereby ratify and confirm all the acts and things that may be done by the said John P. Kohn, acting as my agent, under the authority of this power, as if the same were done in person by myself."

John P. Kohn was an employé of the banking house of Josiah Morris & Co., which banking business was conducted by F. M. Billing. On December 13, 1900, the Legislature passed an act to authorize the board of revenue of the county to issue bonds of the county for an amount not to exceed $100,000 for improving the public roads. The fourth section of the act provides "that the board of revenue of said county are hereby authorized to negotiate and sell such bonds as are issued by them by virtue of this act, but said bonds shall not be sold for less than par (100 cents on the dollar), and the proceeds of said bonds shall be paid over to and kept by the treasurer of said county and applied to pay for the building of and improving the public roads of the county upon a permanent and well-considered system, and for erecting bridges in said county; such use, payment and application of said proceeds to be under the direction and by authority of said board of revenue of said county of Montgomery, and the said county treasurer to be responsible for the safe-keeping of all the proceeds accruing from the sale of said bonds, which may come into his hands in his official capacity, the same as for other county funds or money in his hands as such treasurer; and there shall be no commissions paid said county treasurer for disbursing the funds accruing from the sale of the bonds named in this act." Acts Ala. 1900–01, p. 703.

Under the authority of this act, the board issued $100,000 of negotiable coupon bonds payable to bearer, and sold them January 8, 1901, to Josiah Morris & Co. for $111,109.58. The bonds were held by and under the control of the board. Charles A. Allen was the clerk of the board. Seeking to obtain possession of the bonds, John P. Kohn tendered to the clerk of the board the check of Josiah Morris & Co. for $111,109.58 on the bank of Josiah Morris & Co., and the clerk declined to receive the check for the bonds. Kohn then left the presence of the clerk, and later returned, and presented to him this receipt:

"The State of Alabama, Montgomery County.

"Office of County Treasurer,
"No. 507, Montgomery, Ala., Jan. 8th, 1901.

"Received from board of revenue of county $111,109.58, proceeds sale $100,000.00 bonds. John J. Cochran, County Treasurer,
"By John P. Kohn, His Atty."

On presentation of this receipt, the bonds were delivered to John P. Kohn, who carried them to the banking house of Josiah Morris & Co., and delivered them to F. M. Billing. They were immediately sold, and are outstanding

against the county. Kohn testified as to the disposition of the check: "I indorsed the check, 'John J. Cochran, County Treasurer, by John P. Kohn, His Attorney in Fact,' and made out a deposit slip for the amount of the check to the credit of 'John J. Cochran, County Treasurer, Road and Bridge Fund,' and turned the check and deposit slip in to the receiving teller of the bank for him to make the entries, and the amount was accordingly credited to said Cochran as treasurer on the books of the bank as 'Road and Bridge Fund.' Nothing else was done toward paying that check, except these entries. At the same time, as the attorney in fact of the said treasurer, Cochran, I made an entry on the cashbook of the county treasurer, charging said treasurer with said amount as received from the board of revenue as the proceeds of the sale of $100,000.00 of road and bridge bonds. No money actually passed as between said Josiah Morris & Co. and said board of revenue and said treasurer, but the check was drawn, indorsed, and the amount placed to the credit of the said Cochran, as I have stated. All this occurred on the afternoon of the 8th of January, 1901."

Seventeen days after these transactions, on January 25, 1901, the bank closed its doors, and remains suspended. Before the bank was closed, on and after January 8th, warrants to the amount of $5,769.00, drawn by the treasurer on the road and bridge fund, were paid at the bank.

At the time the check was deposited the actual amount of cash in bank was about $35,000. On the trial the plaintiff offered to prove that at the time the check was deposited the banking house of Josiah Morris & Co. had, together with the cash on hand, available assets in the bank and in New York sufficient to pay the check; but the court, after being informed by counsel for plaintiff that they did not propose to prove that any money was actually set aside and separated from the other assets of the bank, so that the title thereto vested, on motion of the defendant excluded this evidence. The plaintiff further offered to prove that the bonds were immediately, upon their purchase by said Josiah Morris & Co., sent to New York, and a cash credit obtained two days later on them of $95,000 by Josiah Morris & Co.; but the court, on motion of the defendants, excluded this testimony. On February 12, 1901, Cochran made a report to the grand jury of the county showing that he had received from the sale of bonds $111,109.58; but this report was excluded as evidence against the company, Cochran having testified that no money was actually received by him.

It was agreed in open court that, at the time of the failure of Josiah Morris & Co., January 25, 1901, there was on deposit of the general fund of the county, and two or three small special funds about which there is no dispute, not taking into consideration any of the proceeds of the sale of $100,000 of road and bridge bonds, the sum of $32,221.80, and the defendants admitted in open court that the plaintiff was entitled to recover in this action $32,221.80, together with the further sum of $4,648.12, the interest thereon making a total of $36,869.92.

The Alabama statutes provide that the condition of official bonds shall be "faithfully to discharge the duties of such office during the time he continues therein or discharges any of the duties thereof." Code 1896, § 3070. "Every official bond is obligatory on the principal and sureties thereon: (1) For any breach of the condition during the time the officer continues in office, or discharges any of the duties thereof. (2) For the faithful discharge of any duties which may be required of such officer by any law passed subsequently to the execution of such bond, although no such condition be expressed therein. (3) For the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office, as by his failure to perform, or the improper or neglectful performance of those duties imposed by law." Id. § 3087. It is the duty of the county treasurer to receive and keep the money of the county, and disburse the same according to law." Id. § 1429.

The complaint, as amended, contained nine counts. Each of them contained a statement of the material facts; in some of them a condensed statement, and in others a full and elaborate statement. The breach of the bond in the first five counts and in the seventh count is the deposit of the money, the proceeds of the bonds, in bank, whereby it was lost. These counts sug-

gest the contention that the treasurer, by the deposit, had converted the fund, and that the conversion was a breach of the bond, and that, the money having been lost by the failure of the bank, there was a breach of the undertaking to safely keep the money. The sixth count avers that there was a breach of the bond, in this: that the treasurer represented that the purchase price of the bonds was paid to him as treasurer, when in fact no part thereof had been paid. The breach alleged in the eighth count is that the treasurer undertook to collect the check for the' price of the bonds, and wrongfully failed to collect the same. The breach alleged in the ninth count is the false report of the treasurer that he had the proceeds of the bonds. The court sustained demurrers to the sixth, seventh, eighth, and ninth counts. The chief ground of demurrer was that the counts did not show that the treasurer had actually received the money. To the first five counts of the declaration the defendants filed pleas, setting up the fact that the treasurer had not' actually received any money arising from the proceeds of the bonds, and claiming that there was no breach of the bond, because no money was received by the treasurer. The plaintiff demurred to the pleas, and the demurrers were overruled.

The court instructed the jury to find for the plaintiff for $36,869.92, about which sum there was no controversy, but decided that the plaintiff was not entitled to a verdict for any part of the proceeds of the sale of the bonds. Exception was duly taken to this ruling, and to the refusal to give charges for the plaintiff involving the same question. The decisions of the court on the pleadings and on the instructions to the jury are assigned as error.

William L. Martin (John G. Finley and Jesse F. Stallings, on the brief), for plaintiff in error.

Edgar H. Gans (Thos. H. Watts, Alexander Troy, Thomas A. Whelan, Gordon McDonald, William W. Hill, and Willy C. Hill, on the brief), for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The foregoing facts show that Montgomery county has lost the price of $100,000 of its bonds. The treasurer and the surety on his bond, admitting that the former gave a receipt for the purchase money of the bonds and charged himself on his account with the same, claim that he cannot be held for a breach of his bond because he never actually received the price in coin or bank bills. It was not incumbent on the treasurer, they contend, to safely keep the proceeds of the sale, because he never received them, and that as to the fund in question there could be no breach of the bond except failure to safely keep the fund. The plaintiff in error contends that the treasurer did receive the proceeds of sale, and that he failed to safely keep them.

The defendants' position is based on section 4 of the act which authorized the issuance of the bonds. It is there provided that the board of revenue is authorized to sell the bonds, and that "the proceeds of said bonds shall be paid over to and kept by the treasurer of said county," and that the treasurer shall be "responsible for the safekeeping of all of the proceeds accruing from the sale of said bonds which may come into his hands in his official capacity, the same as other county funds or money in his hands as such treasurer." Acts Ala. 1900–01, p. 703. It is asserted by the defendants in error that it was the duty of the board of revenue to get the "proceeds of the bonds in such shape that when they paid them over the treasurer could

keep them until disbursement," and the keynote to the defense is that the treasurer had no right to receive anything but coin or bank bills as the proceeds of sale of the bonds. These contentions depend on the meaning of the act. Was it the intention of the Legislature that no transactions with the board of revenue and the purchaser of the bonds and the treasurer should be permitted except by the use of coin or bank bills? The statute must be construed in the light of commercial usage and common knowledge of business transactions. The word "money," when used as in this statute, does not mean only coin and bank bills. "Such a construction," said Lyon, C. J., in State v. McFetridge, 84 Wis. 473, 515, 54 N. W. 1, 10, 998, 20 L. R. A. 223, "would be extremely technical, and is, we think, uncalled for. 'Money' is a generic term, and may mean not only legal tender coin and currency, but also any other circulating medium, or any instruments or tokens in general use in the commercial world as the representatives of value." And it was held that a certificate of deposit was money within the meaning of a statute. In Taylor v. Robinson (D. C.) 34 Fed. 681, Judge McCormick said: "The term 'money' is used to designate the whole volume of the medium of exchange recognized by the custom of merchants and the laws of the country, just as the term 'land' designates all real estate." In Allibone v. Ames, 9 S. D. 74, 81, 68 N. W. 165, 167, 33 L. R. A. 585, the court applies this definition to a certificate of deposit: "When the certificate of deposit was delivered to plaintiff, and accepted by him, it had all the characteristics of money. Its return to the bank must be regarded as a deposit of that amount of currency. It was, the parties so treating it, precisely the same as if the treasurer had received the coin and again deposited it. To say that if a person deposits a draft or certificate of deposit with a bank, and receives credit for the amount of it, he does not make a deposit of that amount, is simply absurd, in view of the modern methods of transacting business."

And there are other authorities to the same effect, showing that the words "funds or money" and "proceeds of sale," as used in the act, should not be confined in their meaning to coin and bank bills. State v. Krug, 12 Wash. 288, 41 Pac. 126; Byrom v. Brandreth, 16 L. R. Eq. Cases, 475; State v. Hill, 47 Neb. 456, 66 N. W. 541; People v. McKinney, 10 Mich. 55; Bork v. People, 16 Hun, 476.

The use of checks, certificates of deposit, and other commercial instruments is so universal and so essential in large transactions that we cannot assume that the Legislature of Alabama meant to forbid their use in the negotiation and sale of the bonds. If Josiah Morris & Co. had had the coin on hand to pay for the bonds in question, the transaction would have been conducted by the use of checks or certificates of deposit, and we think without any violation of the terms of the statute. If silver coin had been in bank as the basis of the transaction, its weight (about 6,546 pounds) would have made the use of checks or certificates necessary to conveniently complete the transaction. We think, therefore, that checks or certificates of deposit received in good faith by the board of revenue, and delivered to the treasurer, or delivered by direction of the board of revenue to the treasurer, would be "funds or money" or the "proceeds of

sale" of the bonds in the hands of the treasurer. The check for the price of the bonds in the hands of the treasurer, he having receipted for the same as money, was "funds or money" in his hands, within the meaning of the statute. It was not his duty to keep the check, but to have it cashed, and to keep the coin or notes received on the check. In doing this, he should conform to the law of the state, and keep the coin or notes under his actual personal control, as, for example, in his own safe, or on special deposit. It is conceded to be the settled law in Alabama that, if the check was money in the treasurer's hands, it was a conversion of it to make a general deposit of it in a bank. Alston v. State, 92 Ala. 124, 9 South. 732, 13 L. R. A. 659. If there was reluctance in applying this rule generally to a deposit in a solvent bank, it should be applied without question under the circumstances under which the treasurer deposited this fund. If the check was funds or money, within the meaning of the statute, that would seem conclusive. But, if it was necessary that the check be collected before it became money, it is urged with great force that the effect of the deposit of the check to the credit of the treasurer was to collect the check. When the check was presented at the bank and accepted by crediting the amount of it to the treasurer, the effect in law of the transaction was the same as if the amount of the check had been handed to the treasurer and by him returned to the bank. National Bank v. Burkhardt, 100 U. S. 689, 25 L. Ed. 766; City National Bank v. Burns, 68 Ala. 267, 44 Am. Rep. 138; Zane on Banks & Banking, § 133.

The condition of the bond sued on is that Cochran, the treasurer, "shall faithfully discharge the duties of such office during the time he continues therein or discharges any of the duties thereof." One of the treasurer's duties under the general statute is to "receive and keep the money of the county and disburse the same according to law." Code Ala. 1896, § 1429. The act authorizing the bonds provides that the proceeds of the bonds "shall be paid over to and kept by the treasurer," and applied as provided by the statute. Both by the general statute and by the special act it is made the duty of the treasurer to receive the money arising from the sale of the bonds. If it be conceded that the act may be construed that the board of revenue was to sell the bonds, and first receive the proceeds of sale and pay them to the treasurer, there is nothing in the act to forbid the board to permit or require the price of the bonds to be paid directly to the treasurer by the purchaser, the bonds to be delivered to the purchaser on the production of the treasurer's receipt. So the purchaser's money reached the treasurer's hands, it is immaterial whether it passed actually through the hands of the board of revenue or not. The law clearly imposed two duties on the treasurer—first, to receive, the, and, second, to keep, the funds arising from the sale of the bonds. It would be a breach of the treasurer's bond for him to refuse to receive and receipt for money lawfully tendered to him. The condition of his bond is for the faithful discharge of his duties, which includes both the receiving and the keeping of the money. In the usual course of business, it would be the treasurer's duty to receipt for money paid to him. The giving of a receipt for money

paid to him is one of his official duties. Acts Ala. 1888–89, p. 1050, § 4.

Having this power to receive and receipt for the funds arising from the sale of the bonds, he executed a receipt for $111,109.58, proceeds of sale of bonds. Admit, for the purposes of the argument, that the contention here is true, that he received no money but received only a "worthless check," and that there can be no breach of the bond for the failure to safely keep the money, would it not be a breach of the treasurer's bond for him to execute the receipt alleging that he had received the money, when in fact he had not received it? We have seen that he is charged with the duty of both receiving and keeping the money. In Alabama, by express statute, the officer's bond stands as an indemnity against "the improper or neglectful performance of those duties imposed by law." Code Ala. 1896, § 3087. This statute, before the adoption of the present Code, to which it was transferred, was construed to extend the liability of sureties on official bonds beyond that imposed by the common law. Rev. Code Ala. § 169; Kelly v. Moore, 51 Ala. 364. One of the objects of the statute was to extend the remedy beyond those cases in which a wrong is done in the discharge of the legitimate duties of the office, to those in which a wrong is done under color of office. Mason v. Crabtree, 71 Ala. 479. To receive a "worthless check" as money, receipting for it as money and charging the amount as cash upon his official accounts under such circumstances as to cause a loss to the county, would be, we think, to say the least of it, an improper and neglectful performance of duties imposed by law. And, aside from the statutes, at common law it is an error to suppose that the agreement to perform the duties of the office faithfully means merely that the incumbent will not willfully do any wrong act. It has a stretch beyond this, and is broken by a neglect or by carelessness in the discharge of official duty as well as by an intentional misfeasance. Mayor v. Evans, 31 N. J. Law, 342.

In U. S. v. Girault, 11 How. 22, 13 L. Ed. 587, an action was brought on the official bond of Girault, a receiver of public money. The condition of the bond was that Girault should faithfully execute and discharge the duties of his office as receiver of public moneys. The breach of the bond assigned was that Girault had received a large amount of the public money, which he had neglected and refused to pay to the government. The sureties pleaded that Girault gave receipts as receiver for money to the amount of $10,000, when in fact no money was paid to or received by him, and that this was the same money mentioned in the declaration. After disposing of the question raised by demurrer to the plea, the court added:

"The principle, however, upon which these pleas are founded, is as indefensible as the rule of pleading adopted for the purpose of setting it up. The condition of the bond is that Girault shall faithfully execute and discharge the duties of his office as a receiver of public moneys. The defendants have bound themselves for the fulfillment of these duties, and are, of course, responsible for the very fraud committed upon the government by that officer which is sought to be set up here in bar of the action on the bond. As Girault would not be allowed to set up his own fraud for the purpose of disproving the evidence of his indebtedness, we do not see but that, upon the

same principle, they should be estopped from setting it up as committed by one for whose fidelity they have become responsible."

This case, we think, shows that the execution of the receipts by Girault when he had not received the money was a breach of his duty to faithfully execute and discharge the duties of his office as a receiver of public moneys. If Girault was not liable for the money because he had not received it, he was liable for executing the receipts to the loss of the government in the amount thereof when in fact he had received no money.

In Alston v. The State, 92 Ala. 124, 9 South. 732, 13 L. R. A. 659, the court dealt with a case in many respects like this one. It was an action by the state of Alabama on the official bond of the probate judge. The suit was for money alleged to have been collected by the judge, who had received from one Morris his draft or check for the sum of $250 as state license tax for retail dealer. The draft was on the John McNab Bank, of the city of Eufaula, and on January 2d the judge deposited the draft in that bank, and the same was placed to the "credit of A. H. Alston, Judge of Probate, License Money." The bank was of good repute, and had the confidence of the public. On March 31st the bank made an assignment, and was closed. Alston demanded the money of the bank, but never received it. There was no law which authorized the probate judge to issue a license for a "worthless check." The facts showed that he never received any money. It does not appear that he ever saw or touched any money in reference to the transaction. He only received the check on a bank which turned out to be insolvent, and had the same placed to his credit, as stated. The trial court instructed the jury to find a verdict for the plaintiff for the amount of the check, and the Alabama Supreme Court affirmed the decision. Alston was in no better position from having received a bad check than he would have been if he had received the money. The court held that the deposit of the check under the circumstances was merely a general deposit, and that the probate judge had no right to make such deposit of the state's funds. The result was that he was held liable just as if he had received the $250 in cash and deposited it in the bank. Alston, having accepted payment of the license money by the check of the licensee, and having had the same placed to his credit, it does not seem to have occurred to the court that the check could be treated otherwise than as money in a suit on Alston's bond. It is admitted that this case would be in point if it were the treasurer's duty to collect. "It is clear," the learned counsel admit, "that, if an officer is bound to collect as well as safely keep, he violates the duty of collecting in taking a check which is not afterwards realized." But it is urged the case has no application, because the treasurer's only duty was to safely keep the fund when paid to him. Alston, the probate judge, was not a collector in the sense that he was required to take active affirmative steps to collect. No statute required him to search for the licensee. The person intending to retail liquors applies to the probate judge for the license, and it is his duty to issue it only when the amount prescribed by the statute is paid to him. He is a collector only in the sense that he is to receive the money. A simi-

lar duty, as we have shown, is imposed upon the treasurer as to the proceeds of the sale of the bonds. It is his duty to receive such proceeds. The official bonds of the probate judge and county treasurer have the same conditions, and the same statute is applicable to increase their common-law liability.

If the treasurer had received, instead of the check, bank bills, and had deposited them to his credit, as he did the check, and had charged himself with the sum on his account as treasurer, causing the county the same loss as in this case, could he or his sureties, when called on' for settlement, plead that the bills received and receipted for were in fact counterfeit, that the treasurer placed them to his credit in bank, and that the bank had become insolvent? The same argument could be made that is made here, that the statute made his sureties responsible only for the safe-keeping of money, and that he had received no money. The counterfeit bills would be of less value than the check in question. Would such contention constitute a defense to be submitted to a jury? We think not; because, if the bills were genuine, the treasurer, having received and converted them, would be liable on his bond for the amount; if they were not genuine bills, he would be liable for a neglectful or improper performance of official duty in receiving them as genuine. In either case, there would be a plain breach of the bond.

Public policy requires that every officer charged with the duty of receiving and keeping public money should be held to a strict accountability. He should be required to exercise the highest degree of vigilance. When loss has fallen on the public through his official acts, he should not be permitted to avoid responsibility by averments of the improper or neglectful performance of duties imposed on him by law. To permit such defenses would open the door to frauds which might be practiced with impunity. The treasurer or other depositary could lay his plans and arrange his proofs to make good the defense of his sureties by impeaching his own official acts. His own neglect or fraud would become their defense. The condition of the treasurer's bond and considerations of public policy both forbid such defense. Murfree on Official Bonds, § 694. The Supreme Court has held that a custodian of public money could not defend on the ground that the money was stolen (U. S. v. Prescott, 3 How. 578, 11 L. Ed. 734); nor that he had been robbed of it (Boyden v. U. S., 13 Wall. 17, 20 L. Ed. 527); nor that the notes had been accidentally destroyed by fire (Smythe v. U. S. [decided Jan. 26, 1903] 23 Sup. Ct. 279, 47 L. Ed. ——). In the last case the sureties on the bond of the custodian of the money were held for the face value of the burnt notes, although they were merely the government's promises to pay. This harsh conclusion was reached by a divided court, but is upheld by reason and a sound public policy, for a different conclusion would unduly encourage such fires.

It is true that the obligation of the surety is subject to the strictest interpretation, and that his liability must be found within the terms of his contract; but where the bond is for the faithful discharge of official duty, and stands as indemnity against its improper or neglectful performance, and a loss occurs by failure to discharge

such duty, or from a wrongful act done by virtue and authority of the office, such failure and such act are within the very reason and purpose of the law requiring official bonds.

When the board by its clerk declined to receive the check, it was withdrawn, and later the treasurer's receipt for the price of the bonds was presented. It was then that the bonds were delivered. It is contended that the clerk of the board knew that the treasurer had received only the check. That does not change the result. If the execution of the receipt for the check as for cash and the use of it as proved was a breach of the treasurer's bond, the fact that the board or its clerk was also guilty of negligence or of some breach of duty would not afford a defense to the treasurer. The county entered into no contract with the treasurer that its officers would perform their duty, and it is not bound by their neglect. Hart v. U. S., 95 U. S. 316, 24 L. Ed. 479; Jackson Co. v. Derrick, 117 Ala. 348, 23 South. 193. If the treasurer and the clerk wrongfully combined to do just what was done, knowing the ultimate result of loss to the county, such acts would not be the less a breach of the bond of the former. The culpability of one of the plaintiff's agents or officers could not excuse or justify the improper or neglectful performance of duty by another.

The rulings of the Circuit Court are in conflict with the views we have expressed. The judgment, therefore, must be reversed, and the cause remanded, with instructions to grant a new trial.