## CITY OF EL PASO v. TWO REPUBLICS LIFE INS. CO.   (No. 1821.)*

(Court of Civil Appeals of Texas. El Paso. Nov. 25, 1925. Rehearing Denied Dec. 3, 1925.)

**I. Municipal corporations ⬤➾976 — Unauthorized payment of taxes not validated by custom.**

Authority of tax collector of city of El Paso is limited by El Paso City Charter, § 139, providing that ad valorem taxes are payable only in current funds of United States, and city cannot be bound by any long-continued custom of receiving tax payments in unauthorized manner acquiesced in by governing authorities.

**2. Municipal corporations ⬤➾976—Taxes held paid by bank's crediting taxpayers' check to collector's account and debiting taxpayer's account.**

Delivery to city tax collector of check for ad valorem taxes, which check was debited to drawer's account, and credited to collector's account, in bank on which it was drawn, held payment of taxes, notwithstanding El Paso City Charter, § 139, requiring payment in current funds of United States.

⬤➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused January 20, 1926.

**3. Payment** ⊗═21—**Payment by check is conditional, but, when check is paid, it becomes absolute.**

Payment by check, in absence of agreement to contrary, is conditional, but, when check is paid, it becomes absolute.

**4. Municipal corporations** ⊗═880—**Tax collector of El Paso may deposit money in bank pending weekly settlement with city treasurer.**

Tax collector of city of El Paso is lawful custodian of money collected by him pending weekly settlement with city treasurer under El Paso City Charter, § 23, and may deposit it in a bank pending such settlement.

**5. Municipal corporations** ⊗═976—**Agreement between bank and tax collector held not to effect taxpayer's right as to payment.**

Agreement between city tax collector and bank officer that tax collector would deposit in such bank all checks drawn thereon in payment of taxes *held* not to affect rights of drawer of checks not party thereto.

**6. Municipal corporations** ⊗═976—**Tax collector, depositing checks received for taxes, not taxpayer's agent.**

City tax collector, depositing in bank checks received in payment of taxes, and in receiving credit therefor, acted solely for himself and city, and not as taxpayer's agent.

Appeal·from District Court, El Paso County; P. R. Price, Judge.

Action by the City of El Paso·against the Two Republics Life Insurance Company. Judgment for the defendant, and plaintiff appeals. Affirmed.

W. H. Scott, City Attorney, and Armstrong & Morrow, all of El Paso, for appellant.

R. F. Burges, of El Paso, for appellee.

HIGGINS, J. The city of El Paso brought this suit against the Two Republics Life Insurance Company to recover taxes alleged to be due it by the latter for the year 1923, and for foreclosure of the tax lien. The defendant pleaded payment. The case was tried upon agreed facts and judgment rendered for the defendant.

A sufficient statement of the facts is as follows:

The City National Bank of El Paso, Tex., is a national banking corporation, and was engaged in the general banking business in the city of El Paso prior to May 5, 1924. John M. Wyatt is the city assessor and collector of Texas. For the year 1923 the defendant became indebted to the city for ad valorem taxes in the sum of $7,211.78, and a tax lien attached to its properties securing the payment thereof. On April 29, 1924, the defendant drew its check for said amount upon said bank to the order of John M. Wyatt, city assesor and collector, and delivered the same to Wyatt, who accepted the same and issued tax receipt to the defend-

ant. On the same date Wyatt indorsed the check to the order of the City National Bank, and the same was presented to said bank and marked "Paid." On April 29, 1924, the defendant had on deposit with said bank funds sufficient to pay such check, and on the day it was presented and marked paid the bank debited the defendant's account with the amount of the check, and credited such amount to the account of John M. Wyatt, city tax assessor and collector of the city of El Paso.

The City National Bank closed its doors and ceased to do business on May 5, 1924, and passed into the hands of a receiver for liquidation under the National Banking Law. It has been the custom for many years of the city taxpayers to pay taxes with checks, which custom was well known to the governing authorities of the city. The official bond of Wyatt is in due form and for the sum of $100,000, dated April 2, 1923, with the New Amsterdam Casualty Company as surety.

"On or about April 5, 1924, Mr. T. M. Wingo, a vice president, director, and agent of said bank told the said John M. Wyatt that it would be a great accommodation to said bank if he, the said Wyatt, would not deposit in other banks such checks and drafts drawn on the City National Bank as were delivered to him as tax assessor and collector in payment of taxes due the city of El Paso, and requested that he deposit all checks drawn on the City National Bank in that bank, and receive credit therefor. To this request Wyatt agreed. That this conversation or agreement was not known to the defendant.

"That on April 30, 1924, Wyatt deposited to the account of 'Jno. M. Wyatt, Tax Assessor and Collector of the City of El Paso,' checks drawn on the City National Bank by various persons aggregating in amount $34,368.24 and received credit on the books· of the bank therefor, all of which checks representing taxes due to the city of El Paso. Among other checks, and being a part of said amount so credited to him, was this check of $7,211.78. No part of said deposit was ever withdrawn by Wyatt, and at the time of bank's failure the whole of said deposit showed to the credit of said account.·

"No money was ever paid by the said bank to Wyatt or any other person on account of said taxes, and neither Wyatt nor the city of El Paso have ever received any money on account of said taxes, unless the above facts constituted such receipt; the only transactions relating to the taxes for the year 1923 A. D. being the delivery of the check above described, the issuance of said tax receipts, the deposit of said check, and the credit entry on the books of the bank as above set forth. But the said Wyatt could and would have received cash in payment of said check, when presented, if he had requested it.

"John M. Wyatt, as assessor and collector

⊗═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of taxes for city of El Paso, has filed with Albert H. Denton, receiver of the said City National Bank, his claim for the full amount of his credit balance, at the date of suspension of said City National Bank, including the sum paid by defendant, as herein set forth, and such claim has been duly allowed and receiver's certificate for the full amount issued to the said John M. Wyatt, assessor and collector, and dividends have been allowed and ordered paid on said certificate as to other unsecured creditors, but the said Wyatt has not called for nor demanded possession of his receiver's certificate, nor called for nor cashed his dividend check."

It was further agreed that the charter of the city of El Paso should be treated as a part of the agreed facts. The only question presented is whether the facts stated constituted payment of the tax sued for.

Section 139 of the city charter provides:

"That all ad valorem taxes * * * shall be collectible and payable only in current money or current funds of the United States."

In view of this provision, it is insisted by appellant that, in order to show payment of its taxes, it was incumbent upon the appellee to show that current money or funds of the United States actually reached the collector's hands, and the facts in this case simply show a credit reached his hands which he could have converted into cash and this was insufficient.

[1] We, of course, recognize that the authority of the tax collector is limited by the quoted charter provision, and the city cannot be bound by any act of his beyond the limits of his authority; nor do we think that a long-continued custom of receiving tax payments in an unauthorized manner acquiesced in by the governing authorities of the city can be thus validated and made lawful.

[2] But, under the authorities in this state and other jurisdictions, we think lawful payment was established when it was shown that the defendant issued and delivered to the tax collector its check for the amount due, payable in current money to such collector, drawn upon a bank where the defendant had upon deposit funds available for its payment, which check was accepted by the collector, presented to the drawee, which honored the same, and paid it by debiting the defendant's account and crediting the same to the credit of the collector.

[3] Payment by check in the absence of an agreement to the contrary is always conditional, but, when the check is paid, it becomes absolute. Under modern conditions, payment of debts, public and private, is rarely made by physical handling and transfer of actual money but is effected by a system of bank credits. This is especially true where the amount involved is of any magnitude. It is inconceivable that the Legislature did not have in mind this universal custom and practice when it enacted the charter provision of the city of El Paso invoked by appellant. The fiscal system of the state and nation could scarcely function if a valid tax payment could not be effected without an actual physical delivery to the tax collecting authorities of money.

The appellant concedes that, if the cash had been actually delivered to Wyatt when the check was presented to the bank and immediately redeposited, a valid payment would have been effected. But it seems to us this would give controlling effect to a mere formality rather than to the substance of the transaction.

[4] A county tax collector is required by law to deposit in the county depository all taxes collected by him as soon as collected. Article 2444, Complete Texas Statutes 1920. But there is no such provision respecting city collectors under the general law. Section 23 of the El Paso charter requires the collector at the expiration of every week to pay to the city treasurer all moneys by him collected. He is thus the lawful custodian of moneys collected by him pending such weekly settlements with the treasurer. He is responsible for its safety while in his hands, and he is obviously vested with the authority to safeguard the same in such manner as he deems proper. It cannot be questioned that he has the right to deposit the same in a bank pending his weekly settlements. In truth and in fact what was done in the present case was simply a deposit by the collector in the City National Bank of taxes paid by the appellee.

The appellant's contention, if carried to its necessary logical conclusion, would preclude a valid tax payment ever being effected by check where a depository of the public funds had failed, unless it were shown that the actual money had at some stage of the proceeding passed into the physical possession of the city's authorities. It would make the taxpayer the guarantor of the depository selected by the city authorities. In case of its failure, the city could recover of the taxpayer by showing that there had simply been a transfer of bank credits and no money had actually passed into the hands of its officers and depository.

Without undertaking to discuss the many authorities cited by appellant, it is sufficient to say that none of them are directly in point. For the most part they present a state of facts where it was attempted to pay the tax by the collector simply giving credit to the taxpayer upon an indebtedness, the acceptance of a promissory note, a check or draft, which for some reason was not honored.

Reverting to the main question of what constitutes payment in current money or funds, in Citizens' National Bank v. Stevenson (Tex. Com. App.) 231 S. W. 364, an opinion by the Commission of Appeals, expressly approved by the Supreme Court, it was said:

"Do the facts in this case constitute a payment of money for the stock? * * * In this case, J. S. Morrow, president of the Stamford Bank, assisted Stevenson in the purchase of five shares of stock in his bank. In order to enable him to buy the same, he arranged with the bank at Fort Worth to make Stevenson a loan, which was to be evidenced by the latter's note, indorsed by Morrow personally, and further secured by the bank stock to be issued to Stevenson. The note was prepared accordingly. It was signed by Stevenson and indorsed by Morrow. It was accepted by the Fort Worth bank, and the latter placed the amount of the note to the credit of the Stamford bank, subject to its check, and sent in a slip showing the same. The comptroller of the currency of the United States was advised that the money had been paid in, and the increase of the capital stock was authorized by him. Then the stock was issued to Stevenson. He indorsed it in blank. It was then forwarded to the Fort Worth Bank, to be deposited with it as collateral security for the Stevenson note. As we view it, these facts constitute a payment of the money to the Stamford bank, just as completely and conclusively as would an actual transfer of the cash to the vaults of the latter. We are sustained in this view by several of the authorities, to a few of which we refer.

"Morse on Banks and Banking, § 451, says:
" 'A credit given for the amount of a check by the bank upon which it is drawn is equivalent to and will be treated as a payment of a check. It is the same as if the money had been paid over the counter on the check and then immediately paid back again to the account.'

"The above text is quoted with approval by the Supreme Court of Nebraska in the case of Bartley v. State, 53 Neb. 310, 73 N. W. 744, as follows: [Here follows quotation.]

"Again, the same text is cited with approval by the Supreme Court of Oregon in case of State v. Ross, 55 Or. 450, 104 P. 596, 106 P. 1022, 42 L. R. A. (N. S.) 601, 613. That court, continuing, says:
" '3. When the trust company placed to the credit of "Steel, Treasurer, Education," the amount of a check, it thereby acknowledged that it had received the amount of the check in money, and is at least prima facie sufficient to establish the receipt of the money by the Trust Company.'

"Judge Williams, of our own Supreme Court, in case of Anderson v. Walker, County Judge, 93 Tex. 119, 53 S. W. 821, expresses the same view as follows:
" 'It is an undisputed fact that a credit to the county was entered upon the bank books, and this, prima facie, represented so much money on deposit belonging to the county.' See Newmark on Bank Deposits, § 131.

"In our view, therefore, this stock was actually paid for in money."

Kempner v. Galveston County, 73 Tex. 216, 11 S. W. 188, was a suit brought by the county against its former treasurer, and the sureties on his bond, for moneys alleged to have been received and not paid out. It was disclosed that Burk, as treasurer, kept an account with the Island City Savings Bank, N. Weekes was the cashier of the bank, and was also the tax collector of the county. In turning over to the treasurer the money collected as tax collector, it was the course of dealing between the parties for Weekes, as tax collector, to give Burk, as treasurer, a check for the money due the county, taking his receipt therefor. The check was immediately indorsed by Burk and delivered back to Weekes, as cashier of the bank, to be placed to Burk's credit. The court charged the jury, in effect, that, if Weekes, as tax collector, took receipts from Burk, as treasurer, and for which Weekes gave Burk a check on the Island City Savings Bank, which was by Burk indorsed and delivered to Weekes, as cashier of the Island City Savings Bank, for deposit to Burk's credit in the bank as treasurer, this would be a payment to Burk of the moneys represented by said checks, and that this would be so even if Weekes failed to place the money to the credit of Burk upon the books of the bank, and that the jury must regard such checks as money received by Burk as county treasurer. The Supreme Court, opinion by Judge Gaines, in passing upon the charge thus given said:

"It is complained that this charge is upon the weight of the evidence and is incorrect as a matter of law. If the checks had been drawn upon a bank where Weekes did not have funds to meet them it may be that they should not be treated as payment. But if there were funds to meet them when Burk received and receipted for them as money and turned them over to the cashier of the bank to be placed to his credit, we think this settled the transaction as between the county treasurer and the tax collector. If Weekes as cashier of the bank failed to give him credit for the checks on the books of the bank the bank was nevertheless responsible to him for their amount. It then became a matter of indebtedness between him and the bank and did not change the character of the transaction between him and the tax collector. We think the court did not err in charging that it was a payment. We think, furthermore, that the evidence discloses that Burk did ultimately get credit for all the checks, though one for a large amount was not immediately credited to his account on the books of the bank."

This case was again before the Supreme Court reported in 76 Tex. 450, 13 S. W. 460. A charge similar to the one given on first trial of case, and above referred to, was made the basis of the first assignment of error on second appeal. Judge Gaines said:

"It is further contended that although Weekes may have given Burk a check for the sum named in the charge, and Burk may have given him a receipt therefor, no money having actually passed between the parties at the time, there was no payment.

"It is also insisted that since the petition charges that Burk received the money and seeks to hold him responsible only on that ground, unless it was actually paid to him by Weekes, it cannot be charged to him in this action. And it is also claimed that, although Burk has re-

ceived credit on the books of the county for this money, yet he should not be charged with it. But we cannot agree that such is the law."

In Watson v. El Paso County (Tex. Civ. App.) 202 S. W. 126, Watson, the county tax collector, had given Ponder, county treasurer, a check for tax collections drawn upon the Texas Bank & Trust Company. The check was deposited by Ponder with the Union Bank & Trust Company, the county depository. The latter credited the county with the amount of the check. Upon presentation to the Texas Bank & Trust Company the check was dishonored, whereupon the Union Bank charged it back to the county. The suit was by El Paso county against Watson and the sureties upon his official bond to recover the amount of the check. In that case it was said:

"Appellee contends that the treasurer was not authorized to receive from Watson anything but cash in settlement of tax collections. This is correct. Upon this premise it is further contended that the check received was not cash, and, since Ponder had no authority to receive the same from Watson, the county can recover the amount thereof from the latter and his sureties. If the cash which this check represented never came into the custody and control of the county, this contention would be well taken. On the other hand, it is not well taken if the amount of the check came into the custody and control of the county. This, so far as the county was concerned, would constitute a payment and extinguish any cause of action against Watson and his sureties.

"Let us examine this question. While it is true the collector must pay in cash to the county treasurer the moneys in his possession belonging to the county, and while the treasurer must deposit such moneys in the depository, yet there is no law which undertakes to prescribe the manner in which these settlements shall be made between the collector, the treasurer, and the depositary. They may adopt such methods as may be convenient to them, provided the necessary funds are placed in the county depository to the credit of the county. The law does not contemplate that the identical money of the county placed in the depository shall remain there. The county simply gets credit for such deposits. This court considers that whenever a fund due the county has been credited to the county by the depositary, such fund has come into the possession of the county, and is subject to the control of the county, and it constitutes payment to the county; that such fund cannot be withdrawn from the county depositary except upon checks of the treasurer, drawn by authority of lawful warrants, and countersigned by the auditor; that when the depositary of El Paso county credited the amount of Watson's check to the credit of the county treasurer, it in law constituted a payment to the county of the amount of the check, and that the depositary became liable to the county for the amount thereof, and the charging back of the check was an unauthorized withdrawal of county funds."

The cases above cited are not directly in point as is pointed out by the appellant, but at the same time we regard the principle upon which they are decided as applicable here. In further support of our ruling see Montgomery County v. Cochran, 121 F. 17, 57 C. C. A. 261; on second appeal, 126 F. 456, 62 C. C. A. 70; Board of Education v. Robinson, 81 Minn. 305, 84 N. W. 105, 83 Am. St. Rep. 374; Bennett v. Bank (D. C.) 220 F. 950.

We therefore conclude that, while the tax was undoubtedly collectible only in current money or funds, yet there is nothing in the law which precludes the payment being made by a check which is honored upon presentation and paid in the manner herein shown; that in contemplation of law the city tax collector was paid in current money or funds which constructively passed into his hands and became subject to his absolute control and which he lawfully had on deposit in the City National Bank at the time of its failure, pending his weekly settlement with the city treasurer.

[5, 6] We attach no importance to the agreement between Wyatt and Wingo. In the first place, appellee was not a party thereto, and its rights could not be affected by it. Furthermore, it simply amounted to an agreement upon Wyatt's part to deposit in the City National Bank the moneys collected upon checks drawn upon that bank. As above shown, he could lawfully deposit there or elsewhere pending his weekly settlements with the city treasurer. Nor do we think it sound to say that in receiving credit for the amount of the check from the bank the tax collector acted as the agent of the appellee. In so doing he was simply constituting the bank as the depository of the fund pending his settlement with the treasurer. In so doing he acted for himself and the city within his lawful authority.

Affirmed.